GEORGE W. MANN v. WHITE RIVER LOG & BOOMING CO.

*A log-driving company is not a common carrier.*

A common carrier's liability does not attach to a log-driving company for failure to deliver part of a quantity of logs received by it to be driven to their destination.

Error to Muskegon. Submitted Apr. 7. Decided Apr. 13.

ASSUMPSIT on common and special counts. Plaintiff brings error. Affirmed.

*F. W. Cook* for plaintiff in error.

*Frank Bracelin* and *Norris & Uhl* for defendant in error. Log-driving companies are not insurers of the logs

---

nor responsible as common carriers: *Wilcox v. Muskegon Booming Company:* Per Withey J., U. S. circuit court for the Western District of Michigan.

CAMPBELL, J.   Plaintiff sued defendant for not delivering part of a quantity of logs which the company had in charge to deliver at White Lake, after running them down from their place of reception on White river.   As the case was passed upon by the jury they necessarily found that there had been no fault or negligence in defendant, and the only question before us is whether defendant was a common carrier, and liable at all events, except for the risks of a public enemy or inevitable casualty.

The duty undertaken by the defendant was in accordance with its stautory power to drive, run, raft and boom logs in White river for any person having logs to float down the stream, and the case shows that the work of all kinds was done at regular rates, and for all alike.

The dispute, therefore, is narrowed down to the single question whether the handling of logs, as managed by the log-driving and booming companies, is properly to be treated as common carriage.

It is admitted to be like common carriage in the universality of the duty, and by statute a lien is given for charges, not only on the specific logs for charges on each, but on a part to secure the whole charges.   Comp. L. § 2788.   The statute moreover gives a special remedy to enforce the lien. It also contemplates, by the section just referred to, that it is only in the absence of express contract that a uniform rate is provided for.

These rights resemble in important respects the rights of common carriers.   But the statute contains no declaration that the companies shall be so treated, and the whole matter is left to be determined by legal analogies.

When we look at the business done, it will be found to resemble in some respects the business of carriage, and in some respects it is like different business, while in most things it is peculiar and subject to its own conditions.   It

has one peculiarity in which it differs entirely from common carriage, which was held by this court in *Fitch v. Newberry*, 1 Doug. 1, to create no rights against property not voluntarily entrusted to the carrier. One important part of the compensated business of these companies includes the temporary control of logs interfering with the free running of the body of logs in the stream. Comp. L. § 2793.

The peculiarity which is most apparent is that there is no carriage whatever either in vehicles or by application of motive power, unless in some emergency. The logs of various owners are usually, as they were in the present case, set floating promiscuously, and only sorted and separated when the run is as to some portion at least substantially completed. The logs are floated down the streams by the force of the current, sometimes aided by dams and flooding, and if it were not for the risk of jams, no interference to any great extent would be needed. The chief work of the companies when running and driving logs is to see that they are kept in the way of floating down stream, and not allowed to accumulate in jams and obstruct the floatage. And it is to prevent this that the compulsory powers are exercised.

It is manifest that this kind of service differs very much from the possession and transfer of articles which are always in custody and which could not be moved except by the vehicles of the carrier. Among the somewhat fanciful reasons given for the peculiar duties and responsibilities of common carriers, we cannot always determine how far any of them actually operated in shaping the legal rules. But it is dangerous to run after supposed analogies and extend peculiar rules to new cases substantially different from the old. Courts have no doubt settled the law of common carriers as applying to all classes of carriage, however free from most of the special risks and temptations which were relied on to uphold the ancient doctrines. But when it is sought to extend the rules outside of the carrying business altogether, we should not do this unless on very plain reasons of fitness.

Taking heed to give no excessive force to resemblances,

we may find, nevertheless, some other duties which are at least quite as analogous as carriage. Drovers—or as the common law calls them, agisters—perform functions not unlike those of log drivers. Their animals move themselves, while logs are moved by the stream, and the beasts have a species of intelligence, while logs and currents move unconsciously. Yet the chief business of the men in charge of both is to prevent the property from straying or stopping, and to guide it where it belongs. No one regards drovers as carriers. Angell on Carriers, §§ 24, 52; Story on Bailments, § 443. The entire absence of any motive power, and the function of guiding and regulating things which move themselves or are moved by some independent force, make it impossible to treat these classes of business as carriage in fact, and it is difficult to see how, if involving no carriage, there is any propriety in calling them carriage.

There is always hardship and often wrong in holding persons liable for what they have done their best to avoid. While we are bound to respect established rules, we cannot wisely extend them beyond their reasonable application. We think the court below decided correctly that the extreme liabilities of common carriers did not apply to defendants.

The judgment must be affirmed with costs.

The other Justices concurred.

---

This case is reported in 20 American Law Register (N. S.), 734, with a note by M. D. Ewell, defining common carriage and expressing the opinion that the case is one of first impression; also in 12 Central Law Journal, 423, with a note by this Reporter suggesting an analogy between log-driving and the business of towing, and inferring the applicability of similar legal principles.