| 56  | 111   |
| 135 | ¹218  |
| 56  | 111   |
| 139 | ¹599  |

WILLIAM C. COUP v. THE WABASH, ST. LOUIS & PACIFIC RAILWAY CO.

*Common carriers—Duty of forwarding.*

1. A common carrier's liability does not attach to a railway company that has contracted to move a menagerie in the latter's own cars controlled by its own agents, and though operated by railway employees, run upon a time schedule to suit the menagerie. And a stipulation that the railway company shall not be liable for injuries to the menagerie caused by want of care in thus moving it, may be upheld.

2. A common carrier cannot refuse to carry such property as is generally carried, but it must have the right to carry it on trains made up by itself and running on its own time; it cannot be required to make up special trains on demand or drive such trains made up entirely by other persons, or of their cars.

3. A common carrier's statutory duty to receive the cars of other owners does not oblige it to move them except in their own routine and in the ordinary course of business.

Error to Wayne. (Chambers, J.)  Jan. 8–9.—Jan. 28.

CASE.  Defendant brings error.  Reversed.

*Alfred Russell* for appellant. Transportation of live stock and especially of wild animals was not a common carrier's duty at common law (*Mich. South. R. R. v. McDonough* 21 Mich. 165), and need not be undertaken without special terms: *Gordon v. Ward* 16 Mich. 363; *Lake Shore etc. Ry. v. Perkins* 25 Mich. 329; *Levering v. Union T. & Ins. Co.* 42 Mo. 88; *Harvey v. T. H. & I. Ry.* 74 Mo. 546; *Rice v. K. P. Ry.* 63 Mo. 318; *Clark v. Railroad* 64 Mo. 441; *Sturgeon v. Railroad* 65 Mo. 570; *A. T. Co. v. Moore* 5 Mich. 368; *M. C. R. R. v. Hale* 6 Mich. 243; *McMillan v. M. S. R.* 16 Mich. 79, 109, 131; *Buckley v. G. W. Ry.* 18 Mich. 131; *Sisson v. C. & T. R. R. Co.* 14 Mich. 500; *Hawkins v. G. W. R.* 17 Mich. 57; a carrier may contract to labor, without assuming the risk of negligence by the third persons whom he is compelled to employ: *Peek v. N. Staffordshire Co.* (1863) 4 B. & S. 627: El. Bl. & El. 958; *M'Manus v. Lancashire Co.* 4 H. & N. 334; *Robinson v. G. W. Ry. Co.* 35 L. J. (N. S.) 123; *M'Manus v. Lancashire Co.* (1859) 4

H. & N. 327; *Wise v. G. W. Ry. Co.* (1856) 1 H. & N. 63;
*Carr v. L. & Y. Co.* (1852) 7 W. H. & G. 707; *Bates v. G.
W. Ry.* (1865) 24 U. C. (Q. B.) 544; *O'Rourke v. G. W.
Ry.* (1864) 23 id. 427; *Hamilton v. G. T. Ry.* id. 604; *Spel-
linger v. G. W. Ry.* (1865) 15 U. C. (C. P.) 315; *Bissell v. N.
Y. Cent. R. R.* (1862) 25 N. Y. 442; *Parsons v. Monteath*
13 Barb. 353; *Wells v. Nav. Co.* 4 Seld. 375; *Wells v. N. Y.
Cent. R. R.* (1862) 24 N. Y. 281; *Perkins v. N. Y. Cent. R.
R.* id. 196; *Smith v. N. Y. Cent. R. R.* id. 222; see 5 Am.
L. Reg. (N. S.) 460.

*Don M. Dickinson* (*Dickinson, Thurber & Hosmer*) and
*Henry M. Cheever* for appellee.    Contracts of carriage ex-
empting a railroad company from liability for gross negli-
gence are invalid in Illinois: *Arnold v. Railroad Company*
83 Ill. 273; Hutchinson on Carriers § 260; and in New York
the exemption is kept within the strict letter of the contract:
*Blair v. R. R.* 66 N. Y. 313; *Westcott v. Fargo* 61 id. 542;
*Steers v. Steamship Co.* 57 N. Y. 1; *Magnin v. Dinsmore*
56 id. 168; *Belger v. Dinsmore* 51 id. 166; *Stinson v. R. R.*
32 N. Y. 337; *Nicholas v. R. R.* 89 N. Y. 372; and see as
to strict construction of any contract limiting the common
law liability as insurers, *Hawkins' Cases* 17 Mich. 57: 18
Mich. 427; for a full, exhaustive discussion and analysis of
the authorities, see *Railroad Co. v. Lockwood* 17 Wall. 357:
17 Fed. Rep. 905; also *Jones v. Voorhees* 10 Ohio 145;
*Graham v. Davis* 4 Ohio St. 362; *School Dist. v. R. R.* 102
Mass. 552; *Camden R. R. v. Baldauf* 16 Penn. St. 67;
*Berry v. Cooper* 28 Ga. 543; *Read v. R. R.* 60 Mo. 199;
*Camp v. Steamboat* 43 Conn. 333; *Davidson v. Graham* 2
Ohio St. 131; *Snider v. Adams Ex. Co.* 63 Mo. 376; *Fille-
brown v. R. R.* 55 Me. 462; *Goldey v. R. R.* 30 Penn. St.
242; *Mich. R. R. v. Heaton* 37 Ind. 448; *Commonwealth v.
R. R.* 108 Mass. 7; *Jacobus v. R. R.* 20 Minn. 125; 12 Am.
& Eng. R. R. Cases 13, 28, 37: 6 id. 293, 589: 9 id. 90.

CAMPBELL, J.    Plaintiff, who is a circus proprietor sued
defendant as a carrier for injuries to cars and equipments,
and to persons and animals caused by a collision of two trains
made up of his circus cars, while in transit through Illinois·
The court below held defendant to the common-law liability of
a common carrier and held there was no avoiding liability by
reason of a special contract under which the transportation
was directed.    The principal questions raised on the trial
arose out of discussions concerning the nature of defendant's

employment, and questions of damage. Some other points also appeared. In the view which we take of the case the former become more important, and will be first considered.

Plaintiff had a large circus property, including horses, wild animals, and various paraphernalia, with tents and appliances for exhibition. He owned special cars fitted up for the carriage of performers and property, in which the whole concern was moved from place to place for exhibition.

The defendant company has an organized connection, under the same name, with railways running between Detroit and St. Louis, through Indiana and Illinois. On the 25th of July, 1882, a written contract was made at St. Louis by defendant's proper agent with plaintiff to the following effect. Defendant was to furnish men and motive power to transport the circus by train of one or more divisions, consisting of twelve flat, six stock, one elephant, one baggage, and three passenger coaches, being in all twenty-three cars from Cairo to Detroit with privilege of stopping for exhibition at three places named, fixing the time of starting from each place of exhibition, leaving Cairo August 19, Delphi August 21, Columbia City August 22, exhibiting at Detroit August 23, and then to be turned over to the Great Western Transfer Line boats. Plaintiff was to furnish his own cars, and two from another company at Cairo, in good condition and running order. It was agreed that " for the use of the said machinery, motive power and men and the privileges above enumerated, plaintiff should pay $400 for the run to Delphi, $175 to Columbia City, and $225 to Detroit, each sum to be paid before leaving each point of departure."

It was further expressly stipulated that the agreement was not made with defendant as a carrier, but merely " as a hirer of said machinery, motive power, and right of way and the men to move and work the same ; the same to be operated under the management, direction, orders and control of said party of the second part [plaintiff] or his agent, as in his possession, and by means of said employes as his agents, but to run according to the rules, regulations and time-tables of the said party of the first part."

56 Mich.—8

The contract further provides that defendant should not be responsible for damage by want of care in the running of the cars or otherwise, and for stipulated damages in case of any liability. It also provided for transporting free on its passenger trains two advertising cars and advertising material.

The plaintiff's cars were made up in two trains at Cairo, and divided to suit instructions. The testimony tended to prove that two cars were added to the forward train by order of plaintiff's agent, but in the view we take the question who did it is not important. The forward train was for some cause on which there was room for argument brought to a stand-still, and run into by the other train and considerable damage done by the collision.

Defendants insisted that plaintiff made out no case for recovery, and that the contract exempted them. Plaintiff claimed, and the court below held the exemption incompetent.

Unless this undertaking was one entered into by the defendant as a common carrier, there is very little room for controversy. The price was shown to be only ten per cent. of the rates charged for carriage, and the whole arrangement was peculiar. If it was not a contract of common carriage, we need not consider how far in that character contracts of exemption from liability may extend. In our view it was in no sense a common carrier's contract, if it involved any principle of the law of carriers at all.

The business of common carriage, while it prevents any right to refuse the carriage of property such as is generally carried, implies, especially on railroads, that the business will be done on trains made up by the carrier and running on their own time. It is never the duty of a carrier, as such, to make up special trains on demand, or to drive such trains made up entirely by other persons or by their cars. It is not important now to consider how far, except as to owners of goods in the cars forwarded, the reception of cars loaded or unloaded, involves the responsibility of carriers as to the owners of the cars as such. The duty to receive cars of other

persons, when existing, is usually fixed by the railroad laws, and not by the common law. But it is not incumbent on companies in their duty as common carriers to move such cars except in their own routine. They are not obliged to accept and run them at all times and seasons, and not in the ordinary course of business.

The contract before us involves very few things ordinarily undertaken by carriers. The trains were to be made up entirely of cars which belonged to plaintiff and which the defendant neither loaded nor prepared, and into the arrangement of which, and the stowing and placing of their contents defendant had no power to meddle. The cars contained horses which were entirely under control of plaintiff, and which under any circumstances may involve special risks. They contained an elephant, which might very easily involve difficulty, especially in case of accident. They contained wild animals which defendant's men could not handle, and which might also become troublesome and dangerous. It has always been held that it is not incumbent on carriers to assume the burden and risks of such carriage.

The trains were not to be run at the option of the defendant, but had short routes and special stoppages, and were to be run on some part of the road chiefly during the night. They were to wait over for exhibitions, and the times were fixed with reference to these exhibitions and not to suit the defendant's convenience. There was also a divided authority, so that while defendant's men were to attend to the moving of the trains, they had nothing to do with loading and unloading cars, and had no right of access or regulation in the cars themselves.

It cannot be claimed on any legal principle that plaintiff could, as a matter of right, call upon defendant to move his trains under such circumstances and on such conditions, and if he could not, then he could only do so on such terms as defendant saw fit to accept. It was perfectly legal and proper, for the greatly reduced price, and with the risks and trouble arising out of moving peculiar cars and peculiar contents on special excursions and stoppages to stipulate for

exemption from responsibility for consequences which might follow from carelessness of their servants while in this special employment. How far in the absence of contract they would be liable in such a mixed employment where plaintiff's men as well as their own had duties to perform connected with the movement and arrangement of the business we need not consider.

It is a misnomer to speak of such an arrangement as an agreement for carriage at all. It is substantially similar to the business of towing vessels, which has never been treated as carriage. It is, although on a larger scale, analogous to the business of furnishing horses and drivers to private carriages. Whatever may be the liability to third persons who are injured by carriages or trains, the carriage owner cannot hold the persons he employs to draw his vehicles as carriers. We had before us a case somewhat resembling this in more or less of its features in *Mann v. White River Log & Booming Co.* 46 Mich. 38, where it was sought to make a carrier's liability attach to log-driving, which we held was not permissible. All of these special undertakings have peculiar features of their own, but they cannot be brought within the range of common carriage.

It is therefore needless to discuss the other questions in the case, which involve several rulings open to criticism. We think the defendant was not liable in the action, and it should have been taken from the jury and a verdict ordered of no cause of action.

The judgment must be reversed and a new trial granted.

The other Justices concurred.