SEABOARD AIR LINE RAILWAY CO. v. MAIN.

(Filed April 28, 1903.)

1. PLEADINGS—*Complaint—Demurrer—Mistake.*

A demurrer to a complaint, because it alleges a release to have been given prior to the injury. is untenable, the record showing that an amendment had been allowed changing the date of the release.

2. PLEADINGS—*Complaint—Demurrer—The Code, Sec. 260.*

Where the allegations of a complaint are sufficiently intelligible to enable the defendant to know what he is required to answer, it is not demurrable, but the remedy is by motion to make it more definite if it is not sufficiently certain.

3. CARRIERS—*Indemnity Contracts—Negligence—Contracts.*

Where a carrier contracts to transport a circus and is indemnified by the circus company against any loss sustained by injury to the employees of the circus, the carrier is not thereby relieved of its liability for negligent injuries to such employees.

4. INDEMNITY CONTRACTS—*Carriers.*

Where a circus company indemnifies a carrier for any amount which the carrier may be compelled to pay for any injuries to the employees of the circus during transportation, and the carrier pays without suit an employee for injuries sustained, and in an action on the indemnity bond alleges that the amount thus paid was less than the actual damages the employee sustained and less than he would have received by a jury, a demurrer to the complaint on the ground that there should have been an adjudication of the amount of damages by a court of competent jurisdiction will not be sustained.

5. PLEADINGS—*Complaint—Demurrer—Costs — Attachment — The Code, Sec. 466—Appeal.*

Where a claim paid by plaintiff to the sheriff for taking care of attached goods would be taxed in the costs, the defendant is not prejudiced by the overruling of his demurrer to the complaint in which it is set out.

ACTION by the Seaboard Air Line Railway Company against Walter L. Main and another, heard by Judge *W. R. Allen,* at January Term, 1903, of the Superior Court of DURHAM County.

The plaintiff brought this action for the recovery of $750 alleged to be due under the provisions of a contract for the transportation of defendant's circus outfit and equipment by the plaintiff. By the contract the defendant undertook and agreed, among other things, to indemnify the plaintiff and save it harmless from loss and damage incurred by reason of any injuries to defendant's employees. The case was heard in the court below upon demurrer to the complaint, and is before us upon an appeal from a judgment overruling the same. It will be necessary for a clear understanding of the case and the questions presented to give an outline of the pleadings. The plaintiff alleges that, being a corporation and a common carrier of freight and passengers it entered into a contract with the defendant as follows:

This indenture made at Atlanta, Georgia, on the 7th day of October, 1902, A. D., between the Seaboard Air Line Railway Company, party of the first part, hereinafter styled the Railway Company, and the Walter L. Main's Shows, party of the second part, hereinafter styled the Circus Company.

Witnesseth, That for and in consideration of the stipulations and agreements hereinafter set forth, the Railway Company agrees:

First. To furnish the necessary motive power, conductors, enginemen and other trainmen to haul four passenger cars, seven stock-cars and nine platform cars (to be furnished by the said Circus Company), to receive the said cars loaded from Central of Georgia Railway at Athens, Georgia, and to transport said cars and their contents, provided their combined actual gross weight does not exceed ... .... tons of 2000 pounds, from Atlanta, Georgia, to Wadesboro, N. C., as follows: To leave Athens, Ga., on October 17th about 2:00 a. m. for Elberton, Ga., etc.

Second. That should it become necessary to change the

above routes or dates, the Circus Company shall have the privilege of making such change by giving the Railway Company ten (10) days notice in writing.

Third.   To furnish side tracks necessary for the unloading and reloading at each point of destination named therein, to the extent of its existing track room, less such space as may be necessary for the proper conduct of their freight and passenger business, and the space necessary for the free and safe passage of their trains at such points of destination, and also to furnish an engine for the proper placing of cars during the unloading and reloading of said Circus Company's cars.

Fourth.   That so far as convenient and practicable to do so, it will limit the speed of trains carrying any or all of the Circus Company's cars to fifteen (15) miles per hour.

Fifth.   To furnish car orders for free transportation in its local passenger or accommodation train and by the route named herein, two advertising cars, and to furnish passes for the free transportation on all passenger trains for the Circus Company's bill posters (in actual service), baggagemen, and advertising agents with baggage and advertising material.

Sixth.   To arrive, so far as practicable, at each destination before 7 o'clock a. m. on the day of exhibition.

In consideration whereof, the Circus Company binds itself by these presents—

First.   To pay to the said Railway Company the sum of Seventeen Hundred Dollars ($1700.00), in advance as follows:

At Athens, Ga., $283.34; at Elberton, Ga., $ 283.34, etc.

Second.   To release the said Railway Company from all liability for loss or damage to its property, and to hold the said Railway Company harmless for any damage to the persons of its officers, agents, or employees which is not the direct result of gross negligence on the part of the officers,

agents, or employees of the said Railway Company.

Third. To release the said Railway Company from all liability for loss or damage resulting from the said Railway Company's failure to make any or all of the runs provided for herein, or from the failure to make any or all of said runs within the prescribed time, when said failure is due to any accident which is not the result of gross negligence on the part of said Railway Company.

Fourth. To release said Railway Company from all liability for loss or damage by delays due to insufficient side track room at any point of destination.

Fifth. That the said Railway Company shall have the right to haul any or all of the cars of said Circus Company in trains with other freight.

Sixth. That the Railway Company shall not be required to run more than seventy-five (75) miles from one point of exhibition within the usual time of eight hours, or between the hours of 11 p. m. and 7 a. m., although there may be no accident or unusual delay.

Seventh. That the said Railway Company shall have the right to make any repairs to the equipment of the Circus Company for which it may be legally liable at such place and time within ninety (90) days, as the said Railway Company may elect, the said Railway Company agreeing that all such repairs shall be made with as reasonable dispatch as possible.

Eight. That the said Railway Company shall have the right to rigidly inspect the cars of said Circus Company, and to reject any or all of said cars until said Circus Company has made such repairs, alterations, or additions as may be in the opinion of the said Railway Company necessary for the prompt and safe transportation of such cars over its line.

Ninth. That all necessary repairs to the cars of said Circus Company and the renewal of trucks, or other parts,

when the result of ordinary wear, shall be at the expense of the said Circus Company.

Tenth.   That if the said Railway Company should, because of its own negligence, be held responsible for the loss or destruction of any animals transported by it under this contract, said animals shall be charged for at their actual value, not to exceed the following maximum values, to-wit:

Animals and values here omitted.

Eleventh.   That the said Railway Company shall not be held liable for any injury, fatal or otherwise, to any proprietor, agent, or employee for an amount greater than Fifty Dollars ($50.00), for any one person, and that if the said Railway Company should be held liable for a greater amount to any employee, or to his personal representative, the said Circus Company then binds itself to pay such excess to said Railway Company.

Twelfth.   That if it, (the Circus Company) should fail to fulfill the terms of this contract, or to make the number of runs stipulated, the said Railway Company may, at its option, charge for and collect the full amount of compensation provided for under the first section of the second portion hereof.

In Testimony Whereof, the said Parties have hereunto set their hands the day and year above written.

SEABOARD AIR LINE RAILWAY COMPANY,

By R. I. Cheatham.

THE WALTER L. MAIN SHOWS,

By Ed. C. Knuff.

Witness:   C. S. Allen, Jr.

The rate charged the defendant was much lower than the usual rates for like services, and was given in consideration of the stipulation for indemnity in said contract, and that said stipulations were customary in such cases.

While the contract was in force and the cars containing the circus outfit and equipment were on a side track at Elberton, Ga., Oct. 17, 1902, H. Allen, an agent and employee of the defendant, and one of the parties referred to in section 11 of the contract, was in a "regular passenger car on the siding," and was injured by a collision which was caused by the plaintiff's negligence, and that by reason of said injury he has "lost in dollars and cents more than $750."; that Allen demanded of the plaintiff compensation for his said injuries and threatened to sue it for the same, and the plaintiff thereupon notified the defendant, who repudiated the contract and refused to pay anything. The plaintiff thereafter compromised and settled with Allen for the sum of $750 which it paid to him and for which it took a receipt, and a release, dated October, 10, 1902, from any and all other liability on account of said injuries, and said sum of $750 the plaintiff alleges is "less than the injury which Allen sustained and less than he could or would have recovered before a jury." The plaintiff demands judgment for $700 and the costs. The defendant demurred upon the following grounds:

1. Because the release from Allen is dated October 10, 1902 and the injuries are alleged to have occurred on October 18, 1902.

2. Because, while it is alleged that Allen was on a "regular passenger car on the siding," it does not appear that this was one of the four passenger cars furnished by the defendant.

3. It appears from the contract that the plaintiff did not stand, towards the defendant and its agents and employees, as a common carrier with the responsibilities and liabilities incident to that relation, but that it stood in the relation of a private carrier under a special contract for hire and subject only to the liabilities incident thereto, and Allen therefore had no cause of action against the plaintiff, as his right to be

on the train arose out of the special contract, he being one of the employees and servants of the defendant. It follows that, as Allen had no cause of action, the payment to him by the plaintiff was voluntary and imposed no duty on the defendant to reimburse the plaintiff.

4. If the defendant is liable to the plaintiff at all, there can be no recovery under section 11 of the contract before there has been an actual adjudication by a court of competent jurisdiction that the plaintiff is liable to Allen, the person injured.

5. That the plaintiff's cause of action was for money paid to the sheriff for the keep of the horses seized under the attachment is dependent upon its recovery on the principal cause of action, and was improperly joined therewith, and also that it accrued since this action commenced.

From a judgment overruling a demurrer to the complaint, the defendant appealed.

*Winston & Fuller* and *W. H. Day,* for the plaintiff.
*Guthrie & Guthrie,* for the defendant.

WALKER, J., after stating the case:—The first ground of demurrer is untenable, as it appears from the record that the court permitted an amendment of the complaint by which the date of the release was changed from October 10, 1902, to November 10, 1902. This is quite sufficient to dispose of this ground of demurrer. But we do not think that an amendment was necesary for the purpose, as it clearly appears from the context of the complaint that the date affixed to the release was intended for November 10, 1902. It is expressly alleged in Section 8 that a release was given on November, 10, 1902, and it is so impliedly stated in Section 9. But the amendment cures the defect, if there was one.

The second ground of demurrer can not be sustained. It is true, as stated, that the plaintiff was not as explicit in mak-

ing the allegation in question as it might have been, but the allegation is sufficiently intelligible to enable the defendant to know what he is required to answer. "In the construction of a pleading for the purpose of determining its effect, its allegations shall be liberally construed, with a view of substantial justice between the parties." The Code, Sec. 260. But there is another conclusive answer to this objection. The plaintiff alleges in section 5 that Allen is "one of the parties referred to in section 11 of the contract," and we find that section 11 provides that the railroad company shall not be held liable for the injury to any agent or employee of the defendant to an amount greater than $50 and that if the railroad company shall be so held liable the defendant will pay the excess to the railroad company. It follows from this allegation that Allen was either in one of the four coaches of the defendant at the time of the injury, or on one of the plaintiffs' coaches where he had the right to be by virtue of the provisions of section 5 of the contract. By section 11 the plaintiff is indemnified against all liability in excess of $50 for any injury to an agent or employee of the defendant, and it necessarily follows from these allegations of the complaint, when considered together, that Allen was rightfully in the car at the time the injury was received. We are further inclined to think that the complaint sufficiently shows that he was in one of the passenger coaches of the defendant, if the particular allegation, which has fallen under the condemnation of the defendant in his demurrer, is construed in connection with the other averments of the complaint. If the pleading was not sufficiently definite or certain to enable the defendant to understand the precise nature of the allegation, it could by motion have obtained an order from the court requiring the plaintiff to make it definite and certain by amendment, but this can not be done by demurrer, as it is not the statement of a defective cause of action or the

defective statement of a good cause of action, but, at most, only an uncertain and indefinite statement of one of the facts constituting a cause of action. *Allen v. Railroad,* 120 N. C., 548.

This brings us to the principal contention of the defendant that the plaintiff did not sustain the relation of a common carrier towards Allen, but was a private carrier, and as Allen was in the car only by virtue of the contract between the plaintiff and defendant, the former was not liable to him in damages for the injury, and consequently the defendant can not be liable to the plaintiff under the indemnity contract, as the payment of the money to Allen was voluntary and not in discharge of any liability of the plaintiff to him. It is contended by the defendant's counsel that while a carrier can stipulate for release from liability for negligence in regard to property to be transported, it can not do so in regard to passengers "because public policy forbids such a waiver or release, and our courts follow the general Common Law doctrine that a carrier can not by contract secure exemption from liability for its own negligence." It is argued that if the contract for indemnity amounts to the release of the plaintiff from liability for negligence, as such release is against public policy, the contract must be void as it contains a stipulation indemnifying the plaintiff against the consequences of a breach of duty and releasing the plaintiff from its common law liability. In the demurrer, the defendant seems to assert that the plaintiff under the terms of the contract was not a common carrier, but a private carrier and subject only to the responsibilities and liabilities of that relation, which are quite different from those of a public carrier.

It seems to us that if the plaintiff was a common carrier with respect to Allen when he was injured, it has not, in any way by the contract, stipulated for exemption for negligence as between itself and Allen, and, as it has not done so the

contract must be valid. If Allen had sued the plaintiff for his damages, it could not have successfully pleaded that it had been released, even if the law permitted such a release between carrier and passenger, and for the simple reason that there is no provision in the contract for any such release. The very nature and terms of the contract presuppose that the plaintiff will remain liable to any agent or employee of the defendant who is injured by its negligence, otherwise there could be no indemnity, as that always implies a liability on the part of the person or corporation indemnified.

But whether we regard the plaintiff as a common or a private carrier in its relation to Allen, we think that under the terms of the contract and upon the admitted facts of the case it was liable to Allen for the injuries he received. It must be borne in mind that the demurrer admits the material facts alleged in the complaint. In all respects, except loading, unloading and reloading, it appears from the complaint that the plaintiff had the control and management of the cars of the defendant. It had the right to inspect and repair them and to haul them in any of its trains and was required to provide necessary motive power, conductors, enginemen and other train men, and exercise a general supervision over the train. If the defendant had the right to release the plaintiff as a public carrier from liability for injuries to its employees resulting from the plaintiff's negligence, it has not chosen to do so, but on the contrary the very terms of the contract excluded any such idea and strongly implied, if by them it is not expressly provided, that the plaintiff shall be and remain liable for all such negligence.

If the plaintiff at the time Allen was injured, did not occupy the position of a public or common carrier towards him by reason of the special terms of the contract of carriage between the plaintiff and defendant, and the plaintiff was but a private carrier, under a special contract, it was liable in

our opinion by the terms of that contract for any injury to Allen which was caused by its own negligence.   By the contract, the parties did not profess to release the railroad company from liability from acts of negligence, but the agreement is predicated upon the assumption that there may be negligence of the railroad company resulting in injury to the defendant's employees, for which they should have their action.   It would be vain indeed to indemnify the plaintiff against a liability that could never arise.   It must be remembered that the contract provides, not only for a *release* from liability so far as the defendant itself may be concerned, but for *indemnity* against liability to its agents and servants.

The cases cited by the defendant's counsel have no application here.   In *Robertson v. Railroad,* 156 Mass., 525; 32 Am. St. Rep., 482, the injury was caused, not by the negligence of the railroad company, but by that of the proprietors of the circus, the particular negligence being the defective condition of the trucks of its cars.   There are other differences between the two cases.   The case of *Coup v. Railroad,* 56 Mich., 111; 56 Am. Rep., 374, was one in which the plaintiff was the proprietor of a circus and sued for injury to his property, alleged to have been caused by the negligence of the railroad company, and not for injury to one of its servants.   In *Railroad v. Keefer,* 146 Ind., 21, 58 Am. St. Rep., 348; 38 L. R. A., 93, it appeared that the plaintiff, who was an express messenger, had himself authorized the making of a contract releasing the railroad company from liability for negligence.   Several cases of a like tenor were cited to us, but they all rested upon the reason that a railroad company as a common carrier may become a private carrier or bailee for hire, when, as a matter of accommodation or special agreement, it undertakes to carry something which it is not its business to carry, and that as such it can make its own terms

of carriage not involving any stipulation contrary to law or public policy. Lawson Cont. of Carriers, Sec. 110. This is a well recognized principle, but it can not affect the decision of this case, as the plaintiff did not stipulate for exemption from the consequences of its negligence as to the defendant's employees and with their consent. It has expressly agreed to remain liable for such negligence to the employees of the defendant, and the engagement of the latter was to indemnify against this very liability.

It is not necessary for us to decide in this case whether, under its facts and circumstances, the plaintiff could divest itself of the character of a common carrier by contract. *Railroad v. Lockwood;* 17 Wall., 376. Our case resembles that of *Kenny v. Railroad,* 125 N. Y.,422, which was a suit by an express messenger. It is there said that general words will not be construed to limit the responsibility of the carrier for negligence, and that the clause in question, which is similar to the one in this case, should be read so as not to necessarily release the railroad company or prevent an action by the employee of the express company against the former for damages for injuries received while on the road in the discharge of his duties, and the agreement should be considered as one to indemnify the railroad company in the event of such action. "This," says the court, "is a salutary and reasonable rule and the agreement a perfectly proper one for the parties to make," and further that an entire exemption from liability for negligence, which caused the injury to the employee of the company indemnified, will not be presumed, but must be clearly expressed, and immunity from the consequences of such negligence will not be held to exist unless "it is read into the agreement *in ipsissimis verbis.*" This must needs be the correct doctrine, and, when tested by the rule thus laid down, the contract in this case can receive but one construction, namely, that the railroad company remained

liable to the employees of the defendant for the consequences of the negligent acts of itself or its servants. The language of the contract is, that the railroad company shall be saved harmless for any damage to the persons of the defendant's employees or agents, which is not the direct result of gross negligence; and again, that it shall not be held liable for a greater amount than $50, and if it should be held liable for a greater amount, the defendant binds himself to pay such excess to the plaintiff. This language is too plain to be misunderstood and clearly indicates the purpose to have been, not to exempt the railroad company from liability for negligence, but to indemnify it in case it should be liable. This brings the contract within the salutary rule of the law, and does not disappoint the intention of the parties. Besides, this court would hesitate to hold that Allen had relinquished his right of action against the railroad company by a contract to which he had not consented and of which, so far as the case shows, he was entirely ignorant. He might well say *"non haec in foedera veni."* There can be little or no question as to the validity of the contract as one of indemnity, even if we regard the railroad company as a common or public carrier and incapable in that capacity of stipulating against liability for its negligence, as such insurance against liability does not diminish the carrier's own responsibility to the passenger under its care, but increases the means of meeting that responsibility; nor does such insurance tend to relax the carrier's vigilance, as the carrier remains liable to the passenger and no principle of public policy is violated. *Casualty Insurance Co. Case,* 82 Md., 535; *Insurance Co. v. E. & W. Trans. Co.,* 117 U. S., 324; *Ins. Co. v. U. C. Co.,* 133 U. S., 387. But as we have treated this contract as one between the defendant and the plaintiff, as a private carrier, and the defendant, there can be no possible doubt as to its validity.

The defendant contends further that there should have been an adjudication of the plaintiff's liability to Allen by a court of competent jurisdiction before the plaintiff could call upon it for reimbursement under the contract. We can not agree with the defendant in this contention. It is alleged in the complaint that the defendant was notified by the plaintiff that Allen had made his demand for damages for the injuries he had received, and that he would take $750 in full settlement of his claim, and that the defendant "curtly refused to pay Allen one cent;" and that the sum paid Allen was less than the actual damages he sustained, and less than he could and would have recovered before a jury. By the demurrer, the defendant fully admits the truth of this allegation, and for the purpose of ruling upon the demurrer, we think the above statement is a sufficient allegation that the plaintiff has been damnified. The defendant, at the trial of the case, will not be concluded by the settlement with Allen, but will be at liberty to show that the amount paid was excessive, or that Allen was not entitled to recover anything. Why require the plaintiff to sue and recover judgment, when the defendant by demurrer admits the plaintiff's liability to Allen and the amount thereof? *Kerr v. Mitchell,* 18 E. C. L., 447; *Laing v. Hanson* (Tex. Law App.), 36 S. W. Rep., 117; *Lindsey v. Parker,* 142 Mass., 583; *Connor v. Reeves,* 103 N. Y., 527.

The objection to the claim for $95.08, which amount was paid by the plaintiff to the sheriff for feeding the horses attached in this case, while they were in his possession, must be overruled. While it is not strictly speaking a cause of action and should not have been joined as such in this suit, and ought therefore to be disregarded, the defendant was not prejudiced by the failure of the court below to sustain his demurrer in this respect, as the expense of keeping the horses, which can hereafter be allowed by the court, must be taxed

RAILWAY CO. *v.* MAIN.

in the costs and paid by the losing party (Clark's Code, 3d Ed., Sec. 466), and it can make no difference to the defendant how this allegation is considered, whether it is properly a part of the complaint or not, for the plaintiff's recovery of this expense must necessarily depend upon its success at the final trial of the case. If the plaintiff wins in the end, the defendant must pay that expense; and if the plaintiff loses, it can have no reimbursement for the amount paid to the sheriff. It is a mere incident to the suit and not a part of the cause of action, and no issue as to it will be submitted to the jury. Upon a review of the whole matter, we do not find any error in the judgment of the court overruling the demurrer.

*Per Curiam.*    No Error.