ISAAC SMITH, APPELLANT, VS. AESOP GUFFORD, AP-
PELLEE.

CONSTITUTIONAL EXEMPTION—JURISDICTION IN EQUITY—TORT TO
PROPERTY CONDITIONALLY SOLD—WHO CAN RECOVER FOR—BOND ON
INJUNCTIONS IN EXEMPTION CASES.

1. Where a party sells a horse to another upon the condition that it
   is to remain the property of the vendor until paid for, and
   such horse is wrongfully killed by a railroad train while in the
   possession of such vendee, either the vendor or conditional
   vendee can sue for and recover damages for such tort; but a
   recovery by either will be a bar to any further recovery by the
   other. If the conditional vendee, in such a case, sues and re-
   covers for the tort, the vendor then acquires a right of action
   against him for moneys had and received for his use and benefit
   to the extent of the amount originally agreed to be paid by the
   conditional vende for the purchase of the horse. The horse
   killed by the train, in such a case, loses its property identity
   upon being killed; and, if the conditional vendee purchases
   another horse with the moneys collected as damages from the
   railroad company committing the tort, the vendor of the horse
   killed does not become the owner of the new horse so pur-
   chased; neither does he acquire any equitable lien upon him
   for the purchase money due for the horse that was killed. In
   such a case, the party purchasing the new horse with moneys
   collected as damages in tort for the one killed is the absolute
   owner of the new horse so purchased, and can exempt him
   under our Constitution from forced sale, as against the vendor
   of the horse that was killed, under a distress warrant for rent
   and advancements of supplies.

2. Where a bill in equity alleges that the complainant therein is the
   head of a family residing in this State; that he did not own
   personal property exceeding one thousand dollars in value;
   that a distress warrant for rent had been levied upon his per-
   sonal property other than agricultural products raised upon
   the land for which the rent was due; and that the property
   levied on is exempt to him under the Constitution of this State;
   and such bill prays for an adjudication of his right of exemp-
   tion of such property, and that it be set apart to h m as ex-

31

empt*from seizure and sale under such process; and that an injunction be granted to restrain the sale of such exempt property, such bill is sufficient in its allegations to entitle the complainant to the interposition of the court of equity to grant the relief prayed, under the provisions of Chapter 3246 laws, approved March 7th, 1881, entitled "An act to enlarge the equity jurisdiction of the Circuit Courts."

3. Injunctions granted simply to restrain the forced sale of property claimed to be exempt from sale under the Constitution, are not injunctions to stay proceedings at law, within the meaning of the statute prohibiting the granting of injunctions to stay proceedings at law unless bond is given. Upon the granting of injunctions under the provisions of Chapter 3246 laws, approved March 7th, 1881, to restrain the sale of property exempt under the Constitution, no bond is ordinarily necessary to be required. There is nothing in the last named statute, however, that will abridge the discretionary power of the chancellor to grant the injunction in such cases upon such conditions as to bond, etc., as the circumstances of the cases may seem to require.

Appeal from the Circuit Court for Jackson county.

The facts in the case are stated in the opinion of the court.

*Benj. S. Liddon*, for Appellant.

*D. L. McKinnon*, for Appellee.

(Judge Malone, of the Second Judicial Circuit, sat in the place of Mr. Justice Liddon, who was disqualified).

TAYLOR, J.:

The appellee, Aesop Gufford, filed his bill in equity in the Circuit Court of Jackson county against Isaac Smith, the appellant, in which he alleges that in the year 1891 he rented from Smith about twenty-three

acres of land to cultivate as a farm for that year, the said Smith agreeing to advance him supplies for himself and family while making the crop. That he had rented the same land the year previous, 1890, and to secure the rent agreed to be paid for said year 1890 and the advances of supplies that had been made during said year 1890 he executed to Smith a mortgage on all the crops to be made by him during the year 1891. That Smith advanced him supplies to the amount of $30 or $40 during the year 1891, the exact amount of which he did not know. That he made on said land that year fifty to seventy-five bushels of corn, which was then on said land, and one thousand and fifty-three pounds of lint cotton, and ninety-one pounds of seed cotton, that he turned over to said Smith with directions to credit the same on the rent and advances for 1891, but he failed to do so, and had sued out a distress warrant and levied it, not only on the corn and fodder grown on said land, upon which he had a mortgage, but also upon a horse of your orator with which he had cultivated the crops, claiming a lien upon him for said rent and advances, notwithstanding your orator had more than paid him the rent and a portion of the advances. That he believes that the cotton delivered, and the corn and fodder on the place, and the labor that he has performed for him during the year, will fully pay all that he owes for rent and advances for the year 1891, and that he offered to give up all the corn and fodder without going to law, and that this was all that he had to pay with, except the one horse that was worth $50 or $75, and that said horse is the only means that he has to make a living for himself and family. That he is the head of a family and resides in Jackson county, Florida, and claims the benefit of the Constitution and

laws of Florida exempting property from forced sale. That after the levy of said distress warrant upon said corn, fodder and horse, he applied to the deputy sheriff who made the levy to have said horse set aside as exempt, as required by the statute in such cases provided, but the said deputy sheriff refused to do so, and has advertised said horse, together with the other property levied on, for sale on the 27th of February, 1892, which is on Saturday, and not a legal sale day. That all of his personal property of every kind and description, exclusive of that mortgaged to the defendant, which he does not claim or ask to have exempted, is not worth exceeding $125. The bill prays that said horse may be adjudged to be exempt, and that the sheriff be required to set apart said horse and such other personal property as may be exempt, not to exceed $1,000 in value. That the defendant be restrained from selling or otherwise disposing of said horse, and for general relief.

The defendant demurred to the bill upon the ground of a want of equity. The demurrer was overruled, and the defendant answered the bill admitting the renting of the land to the complainant and the agreement to advance supplies to him, but he denies that he exacted, or that the complainant gave him any mortgage to secure the rent of said land for the year 1891 or the advances made to him in 1891, but says that the mortgage made to him by complainant was for the purpose of securing past indebtedness due from complainant to him for rent of the same land and for advances made to him and for a horse sold to him during the year 1890. This mortgage was upon no other property than the crops of all kinds to be raised during the year A. D. 1891. The answer admits the receipt of some money from cotton raised by complainant,

and that he is also entitled to some credit for labor performed for him, and alleges that an account attached to said answer as an exhibit shows all the items of debit and credit between them. This account shows a balance due from the complainant to the defendant, after all credits, of $131.79. The answer denies that the complainant ever instructed the application of the credits for cotton and labor to the rent and advances of the year 1891. The suing out by the defendant of a distress warrant and the levy thereof, as alleged in the bill, is admitted. The application of the complainant to have said horse set apart to him as exempt is admitted to have been made. The answer further alleges that the defendant should not be restrained from selling the horse mentioned in the bill by virtue of his distress warrant, because he says that in the fall of the year 1890 he purchased for and furnished to the complainant a horse, in contemplation of renting land to the complainant for the year 1891. That he paid $39 for this horse in cash, and sold him to the complainant for the same price, with interest at the rate of one *per cent. per month*, but with the distinct understanding between them that said horse should remain the property of this defendant until he should be fully paid for, and that complainant should acquire no title to him until the happening of such event, and that regarding the horse as his own, he therefore did not include him in the mortgage given upon the crops. That this horse was killed by a railroad train about September or October, 1891, and that complainant has never paid anything for him. That the complainant about December 1st, 1891, collected from said railroad company $80 for said horse, and immediately invested $60 of the identical money received by him from the railroad company for this defendant's horse

in another horse, that is the identical one now levied on by defendant's distress warrant.   That he insists that in law and in equity he has all the rights against the horse purchased by the complainant with this defendant's money that he had against the original horse sold by him to the complainant as aforesaid; and he also claims that he is entitled to the $20 received by complainant from the railroad company that was not used in the purchase of the horse in dispute.

Upon the application of the complainant for an injunction to restrain the sale of the horse as prayed in the bill, the complainant made an affidavit positively denying the alleged conditional sale of a horse to him by the defendant, and alleging that the defendant loaned him $39 in 1890, and that he put some more money of his own with it and purchased the horse that was killed by the railroad out of a drove himself. That the defendant had nothing to do with the purchase of that horse whatever.   At the hearing for the injunction the defendant produced the affidavit of one Silas Smith, who swore that he had repeatedly heard the complainant say that the horse that was killed by the railroad was not his horse, but belonged to the defendant, and would not become his property until he paid for it, and that he had never paid for it.   That he heard him so declare only the week before the hearing of the application for injunction.   Upon the bill, answer and these affidavits, the judge on February 22d, 1892, granted an injunction restraining the defendant and the sheriff from selling or otherwise disposing of the horse levied upon under the distress warrant until the further order of the court.   From this order the defendant has taken this appeal.

The first assignment of error is the overruling of the defendant's demurrer to the complainant's bill.   There

was no error in this ruling. The complainant's bill
contained a sufficient statement of the following facts:
That the complainant was the head of a family resid-
ing in this State; that he did not own exceeding $1,000
worth of personal property; that, besides his crops
grown on the defendant's land, the defendant had
caused a distress warrant for rent to be levied upon a
horse that the complainant claimed to 'be exempt to
him as the head of a family under the Constitution of
this State, and he prays therein that the court of
equtty shall adjudge his right of exemption to said
horse, and that he be set apart to him as exempt from
seizure and sale under the distress warrant levied
thereon for the collection of rent and other indebted-
ness due to the defendant. Since the enactment of
Chapter 3246 laws of Florida, approved March 7th,
1881, entitled: "An act to enlarge the equity juris-
diction of the Circuit Courts," there can be no doubt
that the facts set up by the bill entitles the complain-
ant to the interposition of the court of equity to grant
the relief prayed. Cathcart vs. Turner, 18 Fla. 837;
McMichael vs. Grady, 34 Fla. 219, 15 South. Rep. 765.

The second and last assignment of error is, that the
court erred in granting the temporary injunction. We
do not think there was error in granting the injunc-
tion. By causing his distress warrant to be levied on
the horse in dispute the defendant thereby admitted
that it was the property of the complainant, who was
defendant in said distress proceeding, yet in his answer
to the complainant's bill claiming the exemption of
the same horse, the defendant puts himself in the in-
consistent position of having levied his distress war-
rant upon his own property for the collection of a
debt due by another, since his answer to the bill al-
leges that the horse levied on did not belong to the

defendant in the distress warrant, but belonged to him. That he had conditionally sold a horse to the complainant in the fall of 1890, the title to which was to remain in him as vendor until the complainant as vendee fully paid for it. That the horse so conditionally sold was wrongfully killed by a railroad train while in the complainant's possession, before having become complainant's property, and that the complainant collected $80 from the railroad company therefor, and with $60 of the money so collected purchased the horse now in dispute. That under these circumstances, he has all the rights against the horse so purchased that he had upon the original horse conditionally sold to the complainant, and that he is also entitled to the $20 that was collected from the railroad, but not used in the purchase of the horse. If this contention of the defendant appellant's answer were true as a proposition of law as well as of fact, then he mistook his remedy by treating the horse as the complainant's property by levying his distress warrant upon him for the collection of the indebtedness due by the complainant. If the horse belonged to him, by reason of having been purchased with money collected for the wrongful killing of another horse that he owned, then his remedy should have been replevin or trover, instead of distress for rent. The inconsistency of the defendant does not stop here. In his argument upon the appeal here he abandons the contention of his answer, to the effect that he is the owner of the horse purchased with money collected from the railroad, and now claims that under the provisions of section 12, page 703 McClellan's Digest of our laws, he is entitled to a *lien* upon a horse in dispute, because it was acquired by the complainant in exchange or barter for a horse advanced by him to the

complainant to make a crop with. The provisions of the statute invoked are as follows: "Landlords shall have a lien on the crop grown on rented land for rent for the current year, and for advances made in money or other things of value, whether made directly by them or at their instance and request by another person, or for which they have assumed the legal responsibility, at or before the time at which such advances were made, for the sustenance or well being of the tenant or his family, for preparing the ground for cultivation, or for cultivating, gathering, saving, handling or preparing the crop for market; and they shall have a lien also upon each and every article advanced, and upon all property purchased with money advanced, or obtained by barter in exchange for any articles advanced, for the aggregate price or value of all such property or articles so advanced; and such liens for rent and advances shall be paramount and have preference to all other liens." We do not think that the provisions of this statute can be applied to the case made by the facts alleged in the defendant's answer, so as to give the defendant the lien provided for therein. The statute undertakes to give a lien upon each and every *article advanced*, and upon all property purchased with *money* advanced, or obtained by *barter* in exchange for any articles advanced. The defendant's answer does not claim that the horse he furnished was "advanced" to the complainant, in the sense contemplated by this statute, but the claim of the answer is, that he himself was the owner of the horse killed by the railroad; that it was not to become the property of the complainant until paid for; that the complainant had the right to its possession only by virtue of his right to become its owner in future upon full payment thereof. Even if we could say that

the horse thus conditionally sold to the complainant was an "advancement," within the perview of this statute, still, according to the allegations of the answer, we do not think that the horse in dispute can be said to have been obtained by the complainant either with any money advanced to him by the defendant, or by barter in exchange for the horse that was so advanced. The horse conditionally sold by the defendant to the complainant was wrongfully killed, so the answer alleges, by the railroad company. The *identity* of the property was thereby destroyed and, if the allegations of the answer be true, the defendant, vendor of that horse, or the complainant, conditional vendee, either, could have sued for and recovered the damage produced by such wrongful killing. The conditional vendee could have sued because of his special ownership, and the vendor had also the right of action because of his retained legal ownership. The recovery by one, however, being a bar to any further recovery by the other. Kent vs. Buck, 45 Vt. 18; St. L., I. M. & S. Ry. vs. Biggs, 50 Ark. 169, 6 S. W. Rep. 724; Harrington vs. King, 121 Mass. 269. The recovery for the horse here having been had by the conditional vendee, the defendant, vendor, acquired upon such recovery a right of action against the vendee, to the extent, at least, of the price the vendee had agreed to pay for the horse, for moneys had and received by such vendee for his use and benefit, the recovery being had for the destruction of property of which he was the owner. But this was all. The horse over which the defendant retained the conditional ownership completely lost its identity when killed, and to say that the defendant can claim a lien upon any property that the complainant may have purchased with moneys recovered from a railroad

company, in the shape of damages in tort for the wrongful killing of such horse, would be carrying the doctrine of equitable substitution of securities considerably beyond the confines of any case we have met with in the books. But besides all this, the defendant's answer distinctly negatives any claims on the defendant's part to any *lien* on the horse killed or the one purchased with moneys recovered for the one killed, but, on the contrary, alleges absolute ownership of the horse killed, and an equitable ownership of the one purchased with moneys collected for the one killed.

Under the allegations of the bill and answer we think that the horse in dispute was exempt to the complainant under the Constitution of this State from levy and sale under the defendant's distress warrant for rents and advances, and that the injunction was properly granted. Hodges vs. Cooksey, 33 Fla. 715, 15 South. Rep. 549.

It is further contended that the injunction was improperly granted without requiring the complainant to give a bond. There is no merit in this contention. Injunctions granted simply to restrain the forced sale of property that is exempt from sale under any process of law by the Constitution, are not injunctions to stay proceedings at law, within the meaning of the statute prohibiting the granting of injunctions to stay proceedings at law unless bond is given. Lewton vs. Hower, 18 Fla. 879. The statute (Chapter 3246, *supra*), authorizing our courts of equity to restrain by injunction the sale of all property, personal as well as real, that is exempt from forced sale under the Cnstitution, does not in terms require the giving of a bond by the applicant for such injunction, and we do not think that a bond in such cases is ordinarily necessary.

There is nothing in the statute, however, to abridge the discretionary power of the chancellor to grant the injunction in such cases upon such conditions as to bond, etc., as the circumstances of the cases may seem to require.

The decree appealed from is affirmed.