CINCINNATI, NEW ORLEANS, & TEXAS PACIFIC RAILWAY
COMPANY *v.* E. G. SAULSBURY.

'(*Knoxville.* September Term, 1905.)'

1. **NEGLIGENCE.** Inferred by jury as a matter of fact where·
   there is a collision of railroad trains, without explanation of the·
   cause, when.

   Where there is a collision of railroad trains, the jury will be·
   warranted in drawing an inference of negligence on the part.
   of the railroad company as a matter of fact, but not as a.
   presumption of law, where it appears that the company used
   the block system of signals, and that a red block signal was·
   displayed which could have been seen by the engineer for the·
   distance of a half mile, and the company failed to introduce
   any testimony explaining the cause of the collision. (*Post, pp.*
   405, 406.)

   Case cited and approved: Young v. Bransford, 12 Lea, 234.

2. **RAILROAD.** May contract against liability for destruction of
   stave mill and contents on its right of way, by fire or any cause.
   whatever.

   A railroad company in granting a license for the erection of a.
   stave mill on its right of way is not acting in its capacity or
   character of a common carrier, and it may, as other corpora-
   tions or persons, contract against liability for destruction of or·
   injury to said stave mill and contents by fire or by any cause·
   whatever, and such contract is in no way violative of the doc-·
   trine of public policy. (*Post, pp.* 409-413.)

   Cases cited and approved: Griswold v. Railroad, 90 Iowa, 265;
   Insurance Co. v. Railroad, 175 U. S., 91; Railroad v. Carter·
   (Tex. Sup.), 68 S. W., 159; Stevens v. Railroad, 109 Cal., 86.

Railway Co. v. Saulsbury.

3.  **SAME. Same.  Mill and contents include staves piled on railroad right of way under terms of a lease contract, when.**

Under a contract of a railroad permitting the erection of a stave mill on its right of way to be used as a "place of manufacture, storage, and shipment" of staves, with a provision against liability for destruction or injury of said "stave mill and contents" by fire or by any cause whatever, the terms "stave mill and contents" include and embrace all staves, whether finished or not, piled on the railroad right of way in close proximity to the mill, and the railroad is not liable for the destruction of such staves by fire. (*Post, pp.* 404, 413-415.)

4.  **SAME. Same. Same. Liability for goods loaded for shipment and destroyed by fire.**

But the railroad is liable as common carrier, where staves loaded in a freight car on its track ready for shipment are destroyed by fire through its negligence inferred as stated in the first headnote, notwithstanding the contract as stated in the second and third headnotes.  (*Post, pp.* 404, 415.)

---

### FROM SCOTT.

---

Appeal from the Circuit Court of Scott County.—G. M. HENDERSON, Judge.

H. CLAY JAMES and HEAD & ANDERSON, for Railroad.

DENTON & ROBINSON and BAKER & KEENE, for Saulsbury.

MR. JUSTICE M'ALISTER delivered the opinion of the Court.

The plaintiff below recovered a verdict and judgment against the railroad company for the sum of $1,895.87 as damages for the destruction of a lot of staves by fire alleged to have been occasioned by the negligent operation of its trains.

Saulsbury & Co., it appears, had been granted a license by the railroad company to erect a stave mill on its right of way, under a written lease or contract which, among other conditions, provided as follows:

"That they [meaning Saulsbury & Co.] will save and hold harmless the trustees of the Cincinnati Southern Railway and the said railway company, from all damages that may arise from the destruction or injury of said stave mill and contents by fire or from any cause whatever."

The theory of the plaintiff below is that defendant company is not protected from liability by the terms of said contract for the reason: First, that the fire was caused by the negligence of the company and its agents; and, second, that the staves destroyed were not a part of "the mill and its contents," which were alone exempted in said written lease.

It does not appear from the record that the mill itself and its immediate contents were destroyed, but the fire consumed about 34,398 staves which were stacked on the right of way near the mill, and 6,000 staves which had been loaded onto a freight car ready for shipment. A

Railway Co. v. Saulsbury.

portion of the staves destroyed were undressed and had been stored on the right of way for use in the mill, while another portion of the staves destroyed had been dressed and were ready for shipment. It appears that the staves that were burned were lying between the mill and the railroad on the north side of the mill near the corner of the mill. The mill is described in the record as a shed open on three sides. The fire originated in the collision of two trains on the company's right of way near this mill, and as a result of the collision several tanks of oil burst, the oil caught fire, and was communicated to these staves. It further appears that, during the progress of the fire, the employees of the railroad company, for the purpose of preventing the destruction of the passenger track, diverted the flow of the burning oil to the staves of the plaintiff. The passenger track, it appears, was located on the opposite side of the premises of the plaintiff. It thus appears from the proof that the employees of the railroad, in order to save the property of the company, turned the contents of a tank of oil into these staves, which otherwise would not have flowed in that direction. It should be stated, however, that this phase of the case is not presented in the declaration.

It should be remarked that there is no direct evidence of negligence on the part of the company in bringing two of its trains into collision, except such as arose from the mere fact of the collision. It does appear, however, that this railroad company used what is known as the block system, and that the display of the red signal could have

been seen by the engineer. for a distance of half a mile. The block is illuminated in red by means of electricity transmitted through a wire along the rails. It is shown in the proof that a red block was displayed, and that, under the rules, it was the duty of the engineer to send a flagman ahead and wait five minutes. The company failed to introduce any proof explaining the cause of the collision, and the jury was warranted in drawing an inference of negligence on the part of the company as a matter of fact. We do not hold that negligence should be inferred as a presumption of law. *Young* v. *Brans-ford,* 12 Lea, 234.

This is a substantial statement of the facts attending the loss of plaintiff's property.

The assignments of error on behalf of the company are based upon the instructions of the trial judge to the jury and upon the refusal of the court to give certain supplemental requests.

The first assignment is that the court erred in giving the following instruction to the jury, viz.:

"While in this case the defendant railway company might make a contract that would exempt itself from liability for negligence as applicable to the mill building and contents, which it allowed the plaintiff to construct and operate upon its right of way, or ground belonging to the railroad company, . . . the contract entered into would be construed strictly, because it is derogatory of the general law upon that subject, and the limitations of that contract would be construed most

Railway Co. v. Saulsbury.

strongly against the railroad claiming the benefit of it, and so would be extended, by implication of law, to include anything not expressly included by the contract itself. So, in construing this paper, I instruct you that, while the defendant railway company might claim the benefits, and are entitled to the benefits secured to it under this contract entered into and signed by both parties, still the clause, 'They will save and hold harmless the trustees of the Cincinnati Southern Railway and the said railway company from all damage that may arise from the destruction or injury of said stave mill and contents by fire, or from any cause whatever,' could not be construed to extend beyond the limitation expressly stipulated for in that contract. If you should find that the damage resulting to the plantiff from this accident was done to the stave mill and contents, then I instruct you, under the contract, your verdict would be in favor of the defendant. But, if you shall find that the damages sued for in this case were not for injury done to the stave mill and contents, but were for damage done to the plaintiff by the burning up of staves that had been manufactured in his mill and were in a car standing on its side track, and other staves that had been manufactured and placed alongside of the track to be shipped off on defendant's road, and were for staves burned up which had been shipped in there on defendant's train and unloaded to be worked and dressed and then to be shipped off, if you should find that sort of injury, according to this contract, would not limit the liability of the defend-

ant as to that character of damage, . . . I instruct you that he is entitled to recover."

Counsel for plaintiff in error, in order to present his contentions under a proper construction of the contract, submitted the following requests, which were declined by the trial judge, viz.:

"(1) If the plaintiff placed staves in the rough, which were to be worked up, on the railroad's right of way outside instead of in the mill, or under the shed of the mill, then such staves were, under the contract, and under the law, 'contents of the mill,' and being burned, he could not recover therefor.

"(2) 'Contents,' as used in this contract, include staves in the rough placed there to be worked up in the mill, whether stacked on the right of way under or outside of the mill shed.

"(3) If plaintiff had staves which had been worked up and dressed in the mill and were ready for sale and shipment, and plaintiff stacked or placed such staves outside of the mill instead of under the shed, then the plaintiff cannot recover therefor.

"(4) 'Contents,' as used in that contract, will also include dressed staves stacked or placed outside of the mill shed, as well as on the inside of the mill shed."

Recurring to the instructions given by the trial judge in his general charge, it will be remarked that he upheld the validity of the clause in the written lease providing for an exemption of the company from liability to the lessee for the loss of the mill and contents by fire, or

Railway Co. v. Saulsbury.

from any cause whatever. It was contended on behalf of the plaintiff below that this stipulation was void, as against public policy, and the cases were cited holding that a common carrier may not limit its common-law liability as against acts of negligence on its part. It is to be observed, however, that in executing this contract the railroad company was not acting in its capacity as a common carrier, but simply as the owner and lessor of the premises. Nor was this contractual capacity at all affected by the clause appearing in the written lease and relied on by counsel for plantiff below, viz.: "And to use the said stave mill as a place for manufacture, storage, and shipment upon the company's road."

So that it is apparent that the validity of this contract is not to be determined by the right of the railroad company to limit its common-law liability as a common carrier, but the right to make the contract as an ordinary owner of premises. What, then, is the law governing this situation of the parties and determining the measure of liability?

Says Mr. Elliott, in his work on Railroads (volume 3, section 1236) :

"So far as we have been able to discover, there are few cases in the books governing the validity of a contract exempting a railway from liability for negligently firing and burning property. We think that ordinarily a contract exempting a company from liability for negligently burning property not on the right of way or premises of the company would be held void. But where

property is placed on a railway right of way by virtue
of a contract in which the owner releases the railroad
company from any and all liability on account of fire,
and the property is afterwards destroyed by fire, negli-
gently set by the railway company, the contract is not
void, and the company cannot be held liable"—citing
*Griswold* v. *Ill. Central R. R. Co.,* 90 Iowa, 265, 57 N.
W., 843, 24 L. R. A., 647.

In the case of *Hartford Fire Ins. Co.* v. *Chicago, M. &
St. P. Railroad Co.,* 175 U. S., 91, 20 Sup. Ct., 33, 44 L.
Ed., 84, this question was elaborately considered.

Said the court:

"It is settled by the decisions of this court that a pro-
vision in a contract between a railroad corporation and
the owner of goods received by it as a common carrier,
that it shall not be liable to him for any loss or injury
of the goods by the negligence of itself or its servants, is
contrary to public policy, and must be held to be void in
the courts of the United States, without regard to the
decisions of the courts of the State in which the question
arises.   But the reasons on which those decisions are
founded are that such a question is one of general mer-
cantile law; that the liability of a common carrier is
created by common law and not by contract, and that to
use due care and diligence in carrying goods intrusted to
him is an essential duty of his employment, which he
cannot throw off; that a common carrier is under an ob-
ligation to the public to carry all goods offered to be car-
ried within the scope and capacity of the business which

he is holding himself out to the public as doing; and that, in making special contracts for the carriage of such goods, the carrier and the customer do not stand on equal terms."

The court continued:

"In the case at bar, no one had the right to put a warehouse or other building upon the land of the railroad company without its consent, and the corporation was under no obligation to the public or to the partnership to permit the latter to do so. In granting and receiving the license from the corporation to the partnership to place and maintain a cold storage warehouse upon a strip of such land by the side of the railroad track, and erecting the warehouse thereon, both parties knew that its proximity to the tracks must increase the risk of damages, whether by accident or by negligence, to the warehouse and its contents, by fire set by sparks from the locomotive engines or by trains or cars running off the track. The principal consideration embraced in their contract for the license to build and maintain the warehouse on this strip of land was the stipulation exempting the railroad company from liability to the licensee from any such damages, and the public had no interest in the question which of the parties to the contract should be ultimately responsible for such damages to property placed on the land of the corporation by its consent only."

The court concluded that the limitation expressed in the contract granting the license to erect and build on

the right of way was in no way violative of the doctrine of public policy.

In the case of *Missouri, K. & T. Ry. Co. of Texas* v. *Carter* (Tex. Sup.), 68 S. W., 159, the court used this language:

"In some instances the courts have spoken upon the subject of contracts against the negligence of the contracting parties, as if there was a general rule of public policy which forbids persons to make contracts by which one would be exempt from or indemnified against the consequences of his own negligence or that of his servants or agents; but we have not been able to find any sound authority for any such proposition. In fact, the body of judicial decision establishes the contrary doctrine. For it is unquestionably true that, in matters of life, accident, and fire insurance, the contract is made with a view of idemnifying the insured party against the results of his own negligence as well as against the negligence of his servants. A railroad company, when not contracting in its character of common carrier, has the same right of contract as other corporations or persons, and in many instances may make contracts for immunity from liability on account of the negligence of its servants. . . . Likewise a railroad company may contract with an express company for exemption from liability for injuries to its goods or its agents in charge of them, although the injuries be caused by the negligence of its servants, because the contract of carriage is not that of a common carrier. Such

a corporation may likewise by contract secure immunity from liability for damages caused by the negligence of its servants in operating locomotives whereby fire is set to property upon the right of way leased to persons for occupancy and the conduct of private business thereon" —citing *Griswold* v. *Railroad Co.*, 90 Iowa, 265, 57 N. W., 843, 24 L. R. A., 647; *Stevens* v. *Southern Pac. R. R. Co.*, 109 Cal., 86, 41 Pac., 783, 29 L. R. A., 751, 50 Am. St. Rep., 17.

The trial judge, as already stated, held that it was within the competency of these parties to execute the contract in question, containing the exemption clause, and in this instruction he was correct.

But the question remains whether the circuit judge was correct in his interpretation of that contract, and holding that it must be strictly construed and does not embrace any property on the right of way, unless it was actually within the mill and a part of its contents. Counsel for the plaintiff in error contends that the court confined his charge too strictly to the literalism of the contract and thereby ignored the intention of the parties, which is recognized to be the cardinal and governing rule for the construction of contracts.

The insistence on behalf of the company is that the object of the plaintiff below in erecting a mill on the right of way was to establish a plant for the manufacture of staves, and that rough material stored on the right of way to be run through the mill, and likewise the dressed

staves which had already passed through it together with those which had been prepared for shipment, all of which were on the right of way in close proximity to the mill, were as a matter of law embraced within the designation of "the mill and its contents."

It is insisted further that the clear intention of the parties was to exempt the railroad company from liability for the loss of this stave plant, consisting of the building, machinery, and material. We are constrained to hold that such is the proper construction of this contract. Under the express language of this written lease, the stave mill was to be used as a "place of manufacture, storage and shipment," and, in view of the size of this mill, as shown by the proof, it was never contemplated that its operation should be confined strictly to the building, but it was necessary that a part of the right of way should be used for rough material as it might be received, and another portion for the product of the mill as it might be turned out ready for shipment; and such was the practical construction of this contract by the parties themselves during the continuance of this lease. It is, moreover, a principle of construction that, where a man grants a thing, he grants with it everything necessary to its enjoyment. Easements necessary for the enjoyment of a grant of land are created *ex necessitate*, and pass by the grant, although not expressly named. 14 Ency. of Law, 1166.

It is perfectly apparent from the record that, without the right of storage on the company's right of way, near

the track, the business of Saulsbury & Co. could not have been carried on, since the mill erected by them, with the consent of the company, was too small for the accommodation of its working material. This fact was known to the company, and no objection interposed by it at any time to the storage of material on its right of way. So that in our opinion all the staves on the right of way appurtenant to the mill should fall under the designation of "mill and its contents," and the company is not liable for their destruction "by fire or from any cause whatever." We are of opinion, however, that the company is liable as a common carrier for the staves loaded into the freight car and which were ready for shipment. This is practically conceded by counsel for the company in the brief. Unless, therefore, there is a remittitur of all the damages except the value of the car load of staves, the judgment will be reversed, and the cause remanded.