CAROLINA, CLINCHFIELD & OHIO RAILROAD CO. *v.* UNAKA
SPRINGS LUMBER CO.

(*Knoxville.*   September Term, 1914.)

1. **RAILROADS.   Fire.   Emission of sparks.   Negligence.   Evidence.**

Where, in an action for destruction of plaintiff's property by
fire alleged to have been set by sparks from defendant's engines,
it was admitted that the fire, if set by sparks, must have come
from one of two engines identified, and the evidence was conclusive that these engines · were new, of the latest design,
equipped with the latest improved spark arresters in good condition, and were skillfully operated, the evidence was insufficient to sustain a finding that the fire was caused by the
emission of sparks from defective equipment operated by the
railroad company.   (*Post, pp.* 359-363.)

Cases cited and approved:   Railroad v. Fort, 112 Tenn., 451;
Martin v. McCrary, 115 Tenn., 316.

2. **RAILROADS.   Fires.   Negligence.   Rubbish.   Accumulation.**

It is actionable negligence for a railroad company to allow
rubbish or other combustible materials to accumulate on a right
of way near the track so that it will be likely to take fire
from sparks necessarily emitted from engines, and, as a natural
and probable result, ignite and damage another's property.
(*Post, pp.* 363-365.)

Cases cited and distinguished:   O'Neill v. Railroad, 115 N. Y.,
579;  Hawley v. Railroad, 49 Or., 509.

3. **RAILROADS.   Fires.   Engines.   Combustible material.**

In an action against a railroad company for fires alleged to have
consumed plaintiff's property, evidence *held* to require submission to the jury of the question of the railroad company's negligence in permitting inflammable material to accumulate on

the right of way adjacent to plaintiff's property, by means of which fire could be, and was, communicated from defendant's engines to plaintiff's property.  (*Post*, *p*. 365.)

4. **RAILROADS.  Fires.  Release.  Validity.  Public policy.**

. A contract for the construction of a switch track containing a release to the railroad company of any damage sustained by the landowner from loss of property from fire set out by the railroad company's engines, etc., in so far as it related to property outside the railroad's right of way, was not invalid as contrary to public policy.  (*Post*, *pp*. 365-378.)

Cases cited and approved:  Railroad v. Keefer, 146 Ind., 21; Railroad Co. v. Saulsbury, 115 Tenn., 402; Hartford Fire Ins. Co. v. Railroad, 175 U. S., 91; Griswold v. Railroad, 90 Iowa, 265; Stephens v. Railroad, 109 Cal., 86; Mansfield Mut. Ins. Co. v. Railroad Co., 74 Ohio St., 30; Greenwich Ins. Co. v. Railroad Co., 112 Ky., 598; Checkley v. Railroad, 257 Ill., 491; M. K. & T. Ry. Co. v. Carter, 95 Tex., 461; Mann v. Railroad Co., 135 Mich., 210; Porter v. Railroad, 205 Mass., 590; Mayfield v. Southern Ry. Co., 85 S. C., 165; Railroad v. Blaker, 68 Kan., 244; Express Co. Cases, 117 U. S., 1; Coup v. Railroad, 56 Mich., 111.

Cases cited and distinguished:  Burud v. Railroad, 62 Minn., 243; Railroad v. McDonough, 21 Mich., 165.

5. RAILROADS.  Fires.  Destruction of property.  Release. Construction.

A contract of a millowner with defendant railroad company, by which the company agreed to construct a switch track from its main track to the mill located on private property, provided that the millowner, as an inducement to the railroad company, agreed that the company should not be liable for any loss or damage by fire communicated to the millowner's buildings or contents thereof or property stored along the track, by the railroad company's engines, or arising in any manner from the operation of the spur track, and to that end the millowner agreed not to make any claim against the railroad company for any loss or damage that might grow out of fire set by or communicated from the railroad company's locomotives on

or along such track. *Held*, that the release was limited to fires set out by the operation of engines on the spur track, and did not relieve the railroad company from liability for fires set by the railroad company's engines operating on its main line. (*Post, pp.* 378-380.)

6. **SALES.** Conditional sales. Rights of buyer.

The buyer of property under a conditional sale contract in which the title is retained in the seller to secure the price is the equitable owner of the property and,. on the destruction of the property by fire while in the buyer's possession before payment, does not relieve him from the obligation to pay the price. (*Post, pp.* 380, 381.)

Cases cited and approved: Light v. Insurance Co., 105 Tenn., 487; Mfg. Co. v. Buchanan, 118 Tenn., 251.

7. **SALES.** Conditional sales. Destruction of property. Right to sue.

Where property sold under a conditional sale contract is destroyed by the negligence of a third person, either the seller by reason of his retained title, or the buyer by reason of his possession and special or equitable ownership, may sue and recover full damages; and if a suit is brought by the buyer he will hold the balance of the recovery beyond his own interest in trust for the seller. (*Post, p.* 381.)

Cases cited and approved: Smith v. Gufford, 36 Fla., 481; White v. Webb, 15 Conn., 305; Criner v. Pike, 39 Tenn., 400; Railway v. Hall, 107 Tenn., 514.

---

FROM WASHINGTON.

---

Appeal from the Law Court at Johnson City, Washington County to the Court of Civil Appeals and by *certiorari* to the Court of Civil Appeals from the Supreme Court.

POWELL, PRICE & SHELTON and J. R. SIMMONDS, WALTER H. ROBERTSON and J. B. COX, for plaintiff in error.

HARR & BURROWS and GEO. C. SELLS, for defendant in error.

MR. JUSTICE FAW delivered the opinion of the Court.

This suit was brought by the Unaka Springs Lumber Company, a corporation, in the law court at Johnson City, to recover damages for the alleged negligent burning, by the Carolina, Clinchfield & Ohio Railway Company, of a sawmill, some stacks of lumber, and other articles of personal property, situated at a place known as Hager's Siding, in Unicoi county.

The railway company interposed two pleas to the declaration, viz.: (1) Not guilty; and (2) a special plea averring that, in consideration of the construction by the railway company of a side track, or spur track, from the main line of the railway company to the sawmill of the lumber company, the latter had released the railway company from any and all liability for damages on account of the destruction of said property by fire.

There was a trial by jury, which resulted in a verdict for plaintiff for $2,500, with interest from May 24, 1912—the date on which the fire occurred. From the judgment of the circuit court overruling its motion for a new trial, the lumber company appealed to the court of civil appeals, where the judgment of the circuit court was affirmed, and, the writ of *certiorari* having been heretofore granted by a member of this court on petition of the lumber company, the cause is now before us upon assignments of error and brief of the

lumber company, and reply brief on behalf of the railway company.

The sawmill and other property of the lumber company were destroyed by fire about two o'clock in the afternoon of May 24, 1912. The mill was "shut down," and no one was about the premises at the time, and the fire was not discovered until the property was partially consumed. The sawmill was about one hundred and twenty feet from the main track of the railway company and on the land of the lumber company. It is not clear from the record whether the stacks of lumber destroyed were or not on the railroad right of way. A spur track built by the railway company pursuant to a contract with the lumber company extended from the main line of the railroad out to the saw-mill.

Without undertaking to dispose of the assignments of error in the order of assignment on the record, we will consider the controlling questions raised thereby in the order most convenient.

It is insisted that the judgment of the court of civil appeals affirming the judgment of the circuit court is erroneous, because the circuit court erred in refusing to direct the jury to return a verdict for the railway company. Under this assignment of error three propositions are advanced on behalf of the railway company, viz.: (1) That there is no evidence that fire was communicated to the property of the lumber company from an engine of the railway company, and no evidence of negligence on the part of the railway com-

pany; (2) that, by virtue of a written contract in existence at the time of the fire in question, the railway company was exempt from liability for damages to the property of the lumber company occasioned by fire set out by the engines of the railway company; and (3) that the lumber company had no right to recover damages for the destruction of the property in question, because the legal title thereto was not in the lumber company, but was outstanding in a third party.

1. The response of the court of civil appeals to the contention of the railway company that there was no evidence of negligence on its part was as follows:

"We have carefully examined this record with respect to the presence or absence of evidence to show communication of fire by sparks from the company's engine. While not very cogent, we are of opinion that there was introduced some material evidence from which the jury could infer that sparks large enough to set the property on fire were emitted by the engines of the company, and that the fire in question thus had its origin. If an engine emitted sparks of this magnitude, and there is specific evidence to this effect, then the jury were warranted in drawing the conclusion from this alone that the engine communicating the fire was defectively constructed."

We construe the foregoing excerpt from the opinion of the court of civil appeals as a finding that there was some evidence of defective equipment of the engines of the railway company in the matter of spark arresters, and that such defective equipment was the

proximate cause of the fire that destroyed the property of the lumber company. We do not think the record justifies this finding.

It is true there was testimony of three or four witnesses introduced by the lumber company showing that on occasions—in some instances days, in others weeks, and still others months—before the fire in question the witnesses saw sparks emitted from engines of the defendant railway company of sufficient size and wafted to a sufficient distance, in the neighborhood of the mill in question, to have set fire to said mill; but, while the railway company tacitly conceded that it had engines on its road which might emit sparks such as those described by the witnesses above mentioned, it was proven without controversy, and was conceded by plaintiff on the trial in the circuit court, that if the fire was set out by a railroad engine, it must have been set out by *one of two engines particularly identified in the record*. None of the witnesses above mentioned offered to testify that he had ever seen either of the two engines last mentioned emit any sparks.

The railway company proved by the witnesses Staley, Webb, Sublett, and Harmon that the two engines identified as above stated were practically new, of the most modern type of locomotive engines, and were equipped with spark arresters thoroughly up to the present state of the art, and in perfect repair at the time of the fire in question. Each of said witnesses testified from personal observation and knowledge of

the engines in question. Staley was master mechanic of the defendant railway company, and had been employed in that capacity since the year 1908, prior to which service he had 27 years' experience in the mechanical department of the railway shops of the Norfolk & Western Railroad. Staley also shows that the type of spark arresters in use on said engines had been, recently before said witness testified, recommended by the "Master Mechanics' Association, who represent the mechanical men all over this country," as the best spark arrester manufactured.

Webb was an inspector and repairer of engines in the roundhouse and shops of the defendant railway company, and had been engaged in that capacity for more than four years before the fire in question, and prior to his services with the defendant railway company had had an experience of nineteen years as a locomotive boiler maker. He had inspected the two engines and spark arresters in question shortly before and shortly after the burning of the sawmill of plaintiff, and testified that said spark arresters were in perfect condition at the time of each of said inspections.

Sublett and Harmon were the engineers in charge of each of said engines, respectively, and they testified with reference to the kind, character, and condition of the engines and spark arresters, and also with reference to the operation and running of their respective engines at the place where and the time when the fire occurred.

Only one of the witnesses who were offered by the lumber company for the purpose of showing the emission of sparks by the engines of the railway company undertook to speak with reference to either of the two engines which passed the sawmill a short time before the fire, and which, it was conceded, must have set out the fire, if it was set out by a railroad engine. This witness was Mrs. W. H. Bundy, who stated that she was "down over the bank thirty or forty feet" from the railroad track, near her home, which was about three-quarters of a mile from the lumber company's sawmill, and that she saw the passenger train pass a short time before the fire; that the train was late, and was "running pretty fast;" and that as the train passed her she heard and saw cinders fall on a zinc tub and on the leaves. The witness said that she did not see any "coals of fire," or "fire sparks," but "just little cinders."

We do not think there is anything in Mrs. Bundy's testimony which tends to weaken the evidence of the railway company's witnesses concerning the equipment of the two engines in question; and we are of the opinion that the railway company successfully carried the burden of proving affirmatively that these two engines were properly constructed, and were equipped with spark arresters and other appliances of the latest and most approved character to prevent the emission of fire, all in good repair, and properly and skillfully operated. If the case had depended alone upon the averments in the declaration touching negligence in

the equipment and operation of the engines, the railway company was entitled to peremptory instructions in its favor at the conclusion of all the proof below, because railroad companies are authorized to use and carry fire on their engines for the purpose of generating steam, and when they have the engines properly constructed and equipped with spark arresters and appliances of the latest and most approved character to prevent the escape of coals and cinders, in good repair, and carefully and skillfully handled, and observe such other precautions as the surroundings may call for to avoid the communication and spread of fire, they are not liable for property unavoidably destroyed by escaping sparks and cinders. *Railroad* v. *Fort,* 112 Tenn., 451, 80 S. W., 429; *Martin* v. *McCrary,* 115 Tenn., 316, 89 S. W., 324, 1 L. R. A. (N. S.), 530; 33 Cyc., 1335.

But there is, in the declaration in the present case, an averment of negligence as follows, viz.:

"Said defendant negligently allowed, at the place stated above, grass and other combustible matter to accumulate on its road and on its right of way, which caught fire and spread to and caught and consumed the property of these plaintiffs."

There was substantial evidence tending to sustain the averments of the declaration last above quoted. The witness G. Tipton stated that three or four days before the fire he observed some dead brush that had been cut down by the railroad sectionmen lying near the track, and between the lumber piles and the track,

and that, at the same place, there was also some "dry leaves and stuff." Tipton said further that, when he reached the scene of the fire, "it was burned out clean next to the railroad," and within four or five feet of the railroad; that the stacks of lumber between the railroad and the mill were burning; that the fire "was taking hold of the millshed;" and that the wind was blowing from the railroad toward the mill.

The witness Mack Deaderick testified that when he reached the mill after hearing the alarm "it was afire all the way from the railroad track to the mill, and the mill was burning;" that "those things down close [to the railroad] were well burned up—down next to the mill were less burned, but all burning;" and that there was a "pretty stiff wind" blowing towards the mill from the railroad.

It appears in the proof in this case, and is a matter of common knowledge, that, by the aid of the best contrivances so far known and in use, it is impossible to altogether prevent fire caused by sparks from locomotives, if inflammable materials are placed near the track.

"It is negligence on the part of a railroad company to place combustible materials, or to allow rubbish to accumulate, so near its track that they will be likely to take fire from sparks necessarily emitted by the engine and as a natural and probable result ignite and damage another's property, which will render the company liable for such damage." *O'Neill* v. *New York,*

*Ontario & Western R. Co.*, 115 N. Y., 579, 22 N. E., 217, 5 L. R. A., 591.

"The fact that the railroad company has used the proper precautions in constructing, equipping with proper appliances, and in managing its engines is immaterial, and does not relieve it from liability in case a fire started on its right of way by such an engine is communicated to adjoining property by reason of its negligence in permitting combustible material to accumulate along its roadway." 33 Cyc., 1340, 1341.

"A railroad company cannot escape liability for injury to abutting property by fire set out on its right of way through its negligence in permitting the accumulation of rubbish thereon, by showing that its engines were in proper condition and skillfully handled." *Hawley* v. *Sumpter Railway Co.*, 49 Or., 509, 90 Pac., 1106, 12 L. R. A. (N. S.), 528.

We think the evidence of the existence of dead brush, leaves, etc., of a combustible or inflammable nature, on the railroad right of way, adjacent to the property of the lumber company, together with the evidence tending to show that the fire in question originated in said combustible matter on the right of way and spread to the lumber company's property, was sufficient to take the case to the jury, and that there is evidence to support the verdict.

2. Was the railway company released from liability to the lumber company for the fire in question by virtue of the written contract pleaded and proven by the railway company?

It appears that the lumber company, desiring to have a spur track extended to its sawmill, for its convenience in shipping the product of its mill, applied to the railway company to put in such track, and, pursuant to negotiations to that end, the parties entered into a written contract, by the terms of which the railway company agreed to construct the spur track desired by the lumber company. The spur track thus contracted for was accordingly built, and was maintained up to the time of the fire in question. The written contract contained, among other provisions, the following, viz.:

"The party of the second part, in consideration of the premises and as an inducement to the railroad company to make this agreement and to construct and operate said side or spur track, hereby agrees that the railroad company, its successors or assigns, shall not be liable for or on account of any loss or damage which may, at any time, in any manner, arise, to the party of the second part, its heirs or assigns or bailors, by reason of fire communicated to the buildings of the party of the second part, now or hereafter to be erected, or to the contents thereof, or to property of any kind owned or stored by said party of the second part along or near said track, by the locomotives, engines, cars, or trains of the railroad company, its successors or assigns, or arising in any manner from the operations of said side or spur track, and to that end the party of the second part agrees it will make no claim against the railroad company, its successors or

assigns, for any loss, damage, charge, or expense of any kind that may grow out of the fire set by or communicated from the locomotives, trains, or cars of the railroad company upon or along said track.''·

It is insisted on behalf of the lumber company that the above-quoted provision of the contract, purporting to exempt the railway company from liability for damages resulting from fires set out by, or communicated from, the locomotives of the railway company, was, and is, void and unenforceable, because contrary to public policy. The court of civil appeals took that view, and held that ''the prevailing rule seems to be that this exemption from liability is not permissible with respect to property not upon the premises or the right of way of a railroad company,'' and that ''the decided weight of authority is that a contract exemption of this latitude (covering property not on the railroad right of way) is void as against public policy.''

It is well settled that a railroad company cannot, by contract, secure exemption from liability for damages caused by its negligence, in derogation of its duty to the public as a common carrier; but, when not contracting in respect of matters involving such duties, it has the same right as other corporations or persons to contract for immunity from liability on account of its own negligence. *Railroad* v. *Keefer*, 146 Ind., 21, 44 N. E., 796, 38 L. R. A., 93, 58 Am. St. Rep., 348.

There is no rule of public policy which prevents a railway company from entering into a contract with a property owner, based on a valuable consideration,

whereby it shall be exonerated from liability to the property owner for damages caused by fire, communicated from its locomotives, even though occasioned by its negligence; provided the agreement contains no provision which in any way involves the relation of the railway company as a common carrier to the other contracting party or the public. Thompson on Negligence (3d Ed.), sec. 2237.

It was accordingly held by this court that a railroad company, in granting a license for the erection of a stavemill on its right of way, is not acting in its capacity or character of a common carrier, and it may, as other corporations or persons, contract against liability for injury to such stavemill and contents by fire, or by any cause whatever, and such contract is in no way violative of public policy. *Railroad Co.* v. *Saulsbury,* 115 Tenn., 402, 90 S. W., 624.

The adjudged cases from other jurisdictions are, with practical unanimity, in accord with the holding of this court in *Railroad Co.* v. *Saulsbury,* supra. *Hartford Fire Ins. Co.* v. *Chicago, M. & St. P. R. Co.,* 175 U. S., 91, 20 Sup. Ct., 33, 44 L. Ed., 84; *Griswold* v. *Ill. Central R. Co.,* 90 Iowa, 265, 57 N. W., 843, 24 L. R. A., 647; *Stephens* v. *Sou. Pacific Co.,* 109 Cal., 86, 41 Pac., 783, 29 L. R. A., 751, 50 Am. St. Rep., 17; *Mansfield Mutual Ins. Co. et al.* v. *C., C. C. & St. L. R. Co.,* 74 Ohio St., 30, 77 N. E., 269, 6 Ann. Cas., 782; *Greenwich Ins. Co.* v. *L. & N. R. Co. et al.,* 112 Ky., 598, 66 S. W., 411, 67 S. W., 16, 56 L. R. A., 477, 99 Am. St. Rep., 313; *Checkley* v. *I. C. R. Co.,* 257 Ill., 491, 100

N. E., 942, 44 L. R. A. (N. S.), 1127, Ann. Cas., 1914A, 1202. See, also, case note on the subject of ''Contract exempting railroad companies from liability for burning building upon its right of way,'' in 44 L. R. A. (N. S.), 1127, citing other cases.

It is sought to distinguish the present case from *Saulsbury's Case* on the ground that in the latter case the property involved was located on the right of way of the railway company, whereas the sawmill of defendant in error in the present case was not on the right of way or the land of the railway company, but on the premises of the lumber company, and the opinion of this court in *Saulsbury's Case* is cited as authority for the contention that a contract exempting a railroad company from liability for negligently burning property not on the right of way or premises of the railway company is void. In *Saulsbury's Case,* the question of the validity or invalidity of a contract exempting a railroad company from liability for burning property not on the premises of the railroad company was not involved, and was not considered. The only expression in the opinion in that case which might lend color to the thought that the court meant to sanction the distinction which it is now sought to make on behalf of the lumber company, as before suggested, is found in a quotation from Elliott on Railroads, vol. 3, section 1236, as follows, viz.:

''So far as we have been able to discover, there are few cases in the books governing the validity of a contract exempting a railway from liability for negligently

130 Tenn. 24

firing and burning property. We think that ordinarily a contract exempting a company from liability for negligently burning property not on the right of way or premises of the company would be held void. But where property is placed on a railway right of way by virtue of a contract in which the owner releases the railroad company from any and all liability on account of fire, and the property is afterwards destroyed by fire, negligently set by the railway company, the contract is not void, and the company cannot be held liable.''

It is apparent that the expression of the opinion of the learned author of Elliott on Railroads, viz., ''We think that ordinarily a contract exempting a company from liability for negligently burning property not on the right of way or premises of the company would be held void,'' was included in the excerpt quoted in *Saulsbury's Case* merely as a part of the context, and to preserve the integrity of the quotation, and without any purpose on the part of the court to approve or disapprove it. It was not pertinent to the case there in judgment, but the *remainder of the quotation* was directly relevant, and stated the rule which was adopted and applied by the court in the disposition of the case.

Further evidence that, in *Saulsbury's Case*, this court did not intend to suggest that the rule there announced would not be applied where the burned property was not on the premises of the railroad company is found in the fact that the court cited with approval, and quoted at length from, the opinion in *Missouri, K & T.*

*R. Co. of Texas* v. *Carter,* 95 Tex., 461, 68 S. W., 159, which involved the validity of a contract exempting a railroad company from liability for damages by fire to a sawmill located on the land of the owner, adjoining the railroad right of way, and not on railroad property, and which case was, in its facts and the question of law involved, parallel to the present case.

In respect of the statement in Elliott on Railroads wherein it is said, viz., "We think that ordinarily a contract exempting a company from liability for negligently burning property not on the right of way or premises of the company would be held void," it may be said that this is an expression of the personal opinion of the author, unsupported by any authority cited, and while we would, ordinarily, be inclined to defer to the opinion of one so eminent as a text-writer, we cannot, in this instance, yield our assent to a proposition which is, in our opinion, unsound in principle, and which is contrary to the ruling in every adjudged case in which the question was squarely presented that has come to our attention.

In the case of *M., K. & T. Ry. Co.* v. *Carter et al.,* 95 Tex., 461, 68 S. W., 159, cited with approval in *Railroad* v. *Saulsbury,* supra, it appeared that the partnership firm of W. T. Carter & Bro. owned a sawmill adjacent to, but not upon, the right of way of the railway company. The railway company contracted to build and maintain a side track and switch for the convenience of Carter & Bro. extending to their said sawmill, in consideration of the latter releasing the rail-

way company from all damages arising from the injury to, or killing of, stock belonging to the firm, or its contractors or employees, by the locomotives and cars on the said side track and switch, and from all damages resulting from the injury or destruction of the property of the firm, and its contractors and employees, by fire from any locomotive of the company at or about the side track and switch.    It was held that the contract showed on its face a sufficient consideration to render it valid, and that it was not void as against public policy; the agreement establishing a side track and switch where none existed, and where none was required by the public, merely for the promotion of the private interests of the millowner, and without relieving the company from its duty to the public in the equipment and management of its trains.

In the course of the opinion, it is said, viz.:

"This public policy of the State relates to conditions, which arise out of the construction and operation of railroads and out of the pursuits of business in its vicinity; but the parties in this case established by their contract a switch where none was required by the existing conditions of business or for the public use, and it was established solely for the promotion of the private interests of the appellees, to develop at that place a business out of which would arise increased risks to the railroad company in the operation of its locomotives.   By the terms of the contract the exemption from liability is limited to such property as might belong to appellees situated at and about the

Railway Co. v. Lumber Co.

switch, for which the railroad company was not respon-
sible as a common carrier.  The contract does not pro-
vide that the railroad company may relax its diligence
in the equipment of its locomotives, nor does it ex-
empt the railroad company from liability for damages
occasioned to the property of others at and about the
switch; but the same diligence in equipping the loco-
motives and the same care in operating them was re-
quired as to property of all other people as would have
been if the exemption had not existed.  It is true that
the appellees bound themselves to indemnify the rail-
road company against damages which might occur to
property belonging to contractors and employees of
the appellees; but the contract does not purport to ex-
empt the railroad company from responsibility to the
owners of such property.  We conclude that the con-
tract certified is not violative of the public policy of
the State, but is a legitimate exercise of the liberty of
contract, by which the appellees voluntarily, and for
the purpose of securing the convenience of the railroad
at that point, agreed to release the railroad company
from liability for injury which might occur to their
property by the negligence of the employees of the
railroad or by such unavoidable accident as is fre-
quent by the escape of fire from the best-equipped ma-
chinery.  This conclusion is in harmony with the deci-
sions of the supreme court of the United States and the
current of judicial decisions of the several States.  Es-
pecially is it supported by that class of decisions which
holds that railroad companies may, by contract, re-

lieve themselves of liability for injuries occasioned to the property of express companies or to their messengers when carried upon passenger trains, although such injury may arise through the negligence of the railroad employees. *Express Co. Cases,* 117 U. S., 1, 6 Sup. Ct., 542, 628, 29 L. Ed., 791. The agent of an express company, while riding upon the same train with passengers, and liable to the same dangers, occupies a different relation to the railroad company, when, by the terms of the contract, the railroad company is released from liability to such agent or servant of the express company. The *Express Co. Cases,* before cited, are thoroughly analogous in principle to this case, and establish clearly the distinction which exists between contracts limiting the liability of railroads as common carriers and contracts by which they are permitted, in the matter of carrying their property and messengers of the express company, to contract for exemption; and out of this difference different duties arise and different responsibilities rest upon the carrier. If a railroad company may by contract change its liability as to a special class of property or persons, then, by a greater reason, they would be authorized to make such contracts, as, in this case, which apply to a given locality and particular circumstances.''

In the case of *Mann et al.* v. *Pere Marquette R. R. Co.,* 135 Mich., 210, 97 N. W., 721, it appeared that plaintiffs were lumbermen, owning a large sawmill plant adjoining, but not upon, the railroad right of way, and desiring to have a spur track on each side

of their mill for the purpose of shipping in supplies and shipping out the product of their mill, they entered into a contract with the railroad company for the construction of such spur tracks, and same were constructed accordingly. The said sawmill property of plaintiffs, or some part of it, was destroyed by fire, set out by means of sparks from one of the railroad company's locomotives. Plaintiffs sued the railroad company for the value of the property thus destroyed, and the railroad company interposed as a defense a provision of the contract before mentioned under which said spur tracks had been built, which provision undertook to exempt the railroad company from "all liability, statutory or otherwise, for any loss or injury by fire sustained in respect to buildings owned by the first party, or personal property belonging to or in charge of the first party, now situated or hereafter placed in the vicinity of said side tracks, whether such loss or injury be due to negligence of the second party or its employees, or to other causes." It was held that the contract was valid, and the railroad company was not liable for the loss of plaintiff's property. The court said, among other things, the following, viz.:

"Counsel for plaintiffs contend in their supplemental brief that the contract is void because it exempts a common carrier from loss resulting from its own negligence, and that such contracts are void as against public policy. This case does not fall within those where contracts to exempt from liability are held void on the ground of public policy. It is a fun-

damental rule of law that what one may refuse to do
entirely he may agree to do upon such terms as he
pleases.   In contracting to put in these side tracks,
the defendant was not acting in the capacity of a com-
mon carrier.   It was under no legal obligation to put
them in.   It might have refused.   It is a fact known to
all, and appears upon this record as well, that engines,
when properly equipped and properly managed, will
oftentimes set fires, and the court so said to the jury.
In *Burud* v. *Great Northern Ry. Co.,* 62 Minn., 243, 64
N. W., 562, the court said that a court, as well as a
jury, is justified in taking notice of the fact that it is
impossible, by means of any present known appliances,
to so construct and equip a locomotive that it will not
sometimes scatter sparks and cinders.   There was no
occasion to contract against properly equipped and
properly managed engines; for fire caused by such
would not create any liability.   The only purpose of
such a contract was to avoid the consequences of its
own negligence, and to avoid lawsuits growing out of
alleged negligent acts.   It had a perfect right, both
in reason and authority, to contract against such lia-
bility.   This is well settled, both by our own decisions
and those of other jurisdictions.   *Coup.* v. *W., St. L. &
P. Ry. Co.,* 56 Mich., 111, 22 N. W., 215, 56 Am. Rep.,
374; *M. S. & N. I. R. Co.* v. *McDonough,* 21 Mich., 165,
193, 4 Am. Rep., 466.   In the latter case, speaking
through Justice Christiancy, the court said: 'Having
the right to refuse altogether, they must have the right

to refuse except upon just such terms and conditions as they saw fit to require.' "

In the case of *Porter* v. *N. Y. & H. R. Co.*, 205 Mass., 590, 91 N. E., 875, a contract and state of facts similar to that in the case of *Mann et al.* v. *Pere Marquette R. R. Co.*, supra, was involved, and the contract was held valid. The opinion in *Porter's Case* is very short, and does not discuss the legal principles involved, but it is manifest that the court held the contract valid on the theory that the railway company's obligations and duties as a common carrier were not involved, and it therefore had the right to contract against liability for its own negligence. See, also, *Mayfield* v. *Southern Ry. Co.*, 85 S. C., 165, 67 S. E., 132.

We are referred by counsel for the lumber company to the case of *Railroad* v. *Blaker*, 68 Kan., 244, 75 Pac., 71, 64 L. R. A., 81, but that case is not an authority for the proposition in support of which it is cited. It appeared in that case that a dealer in grain and lumber leased a portion of the right of way of a railroad company, upon which it built an elevator and some warehouses, and it was stipulated in the lease contract that the railroad company should not be liable for the burning of property erected or stored on the rented premises. Fire set out by the engines of the railroad company destroyed the property of the lessee located on the right of way, and the fire was also communicated to other and connected buildings belonging to the lessee which were not on the right of way. It was held that the fact that the railroad company was exempt

from liability for the burning of the property on the right of way did not relieve it from liability for the negligent burning of the connected property not situated on the railroad premises. A reading of the opinion of the court discloses that the case turned entirely upon the terms and construction of the contract— whether by its terms it covered and included only property on the right of way, or both the property on the right of way and the connected property of Blaker not on the right of way. The question of the validity or invalidity of a contract exemption from liability for destruction of property not on the right of way of the railroad company was not involved in the case, and was not considered in the opinion.

We think the contract involved in the present case was valid and enforceable according to its terms.

But it is insisted for the lumber company that, if the contract is not void as against public policy, nevertheless it does not include fires communicated from engines operating on the main track in the usual course of business, and in no way connected at the time with the use of said spur track. The trial judge and the court of civil appeals so construed the contract, and in this we think there was no error. The construction, maintenance, and operation of the spur track was the subject-matter of the contract; and it may be reasonably assumed that it was the increased hazard which would result from the operation of the railway company's engines on said spur track that led to the insertion into the contract of the provision here in ques-

tion. The paragraph of the contract containing the exemption from liability has already been quoted herein, and need not be repeated. We think that, under a fair construction of the language used, the lumber company agreed that the railway company shall not be liable for any loss or damage which the lumber company may at any time suffer "from the operation of said side or spur track," and that the lumber company will make no claim against the railway company "for any loss, damage, charge, or expense of any kind that may grow out of fire set by, or communicated from, the locomotives, trains, or cars of the railway company upon or along said track," and that the exemption from liability did not extend further than damages suffered by the lumber company from the operation of the spur track, or growing out of fires set by, or communicated from, locomotives, trains, or cars of the railway company operating upon or along the spur track.

It is uncontroverted that the engine which it is claimed set out the fire involved in the present case was on the main line, and was not at the time in any way connected with the operation of the said spur track. It results that the contract in evidence in this case did not operate to exempt the railway company from liability for the fire in question.

3. The third and last reason assigned by the railway company for its insistence that the lumber company had no right to recover damages for the burning of the property in question was that the legal title

thereto was not in the lumber company, but was outstanding in a third party.

As we understand the record, this claim does not extend to all the property destroyed, and for the value of which judgment was rendered, but it covers only the engine, and possibly some other parts of the machinery of the sawmill.

The proof shows that the lumber company had executed notes for the purchase price of the engine and parts of the mill, and the notes recited that the vendor retained title to the property until the notes were paid. It appears that a part of the original purchase price of $1,500 had been paid at the time of the trial below, but the amount of such payments is a matter of uncertainty on the record; whether the balance remaining unpaid was $250 or about $900 is not clear. However, the *amount* of the unpaid balance is not material to any question arising on this record.

The lumber company was in the undisputed possession of the property at the time of the fire. A purchaser of personal property, under a conditional sale in which title is retained in the vendor to secure the purchase price, is the equitable owner of the property. *Light* v. *Insurance Co.*, 105 Tenn., 487, 58 S. W., 851. The retention of the title in the vendor was a mere security for the payment of the price. *Mfg. Co.* v. *Buchanan*, 118 Tenn., 251, 253, 99 S. W., 984, 8 L. R. A. (N. S.), 590, 12 Ann. Cas., 707. The destruction of the property by fire while in the possession of the vendee, before payment did not relieve the vendee from the

obligation to pay the purchase price. *Mfg. Co.* v. *Buchanan,* supra.

The identity of the property was destroyed when it was consumed by fire, and either the vendor or the conditional vendee had a right to sue for and recover the damages resulting from its wrongful destruction. The vendor had a right of action because of his retained title, which he held as security for the unpaid portion of the purchase price; and the conditional vendee had a right to sue and recover because of his possession and special or equitable ownership; but a recovery by one would be a bar to a recovery by the other. *Smith* v. *Gufford,* 36 Fla., 481, 18 South., 717, 51 Am. St. Rep., 37. If the suit is brought by the conditional vendee, as in the present case, he is entitled to recover the full value of the property, and he will hold the balance beyond his own interest—that is, the amount due the vendor on the purchase price—in trust for the vendor. *White* v. *Webb,* 15 Conn., 305; *Smith* v. *Gufford,* supra. These rules are in harmony with our own cases. *Criner* v. *Pike,* 2 Head, 400; *Railway* v. *Hall,* 107 Tenn., 514, 64 S. W., 481. The third assignment must therefore be overruled.

It results that the judgment of the court of civil appeals will be affirmed.