CLEVELAND, CINCINNATI, CHICAGO & ST. LOUIS RAILWAY COMPANY *v.* HENRY, ADMINISTRATOR.

[No. 21,211. Filed February 19, 1908.]

1. PLEADING.—*Complaint.*—*Railroads.*—*Damages.*—*Unemancipated Child.*—A complaint by the administrator for damages for the negligent killing of an unemancipated child, need not allege facts showing that the next of kin—father, mother, brother, sister—naming them—would sustain damages, that being the subject of proof. p. 98.

2. RAILROADS.—*Transporting Shows.*—Railroad companies are under no legal duty to transport show cars. p. 98.

3. SAME.—*Private Carriers.*—A railroad company may, by contract, become a private carrier of property which it is under no legal duty to transport. p. 99.

4. SAME.—*Carriers.—Public Policy.*—The law enforces certain liabilities against public carriers in the interest of the public welfare. p. 99.

5. SAME.—*Carriers.—Private.—Contracts.*—A private carrier may wholly absolve itself, by contract, from liability for its negligence. p. 100.

6. SAME.—*Carriers. — Private. — Transporting Shows. — Contracts Avoiding Liability.*—An employe of a show is conclusively presumed to know that his transportation by rail is under a private contract; and he is bound by the terms of such contract, whether he knows thereof or not; and his right of action for damages for the carrier's negligence may be entirely defeated by such contract. p. 100.

7. STATUTES.—*Modifying Common Law.—Construction.*—Statutes in derogation of the common law are strictly construed. p. 104.

8. RAILROADS.—*Hauling Shows.—Liability to Employes of Show.*—Where a show company contracts with a railway company for the transportation of its property and employes for a stipulated gross sum, specifying in such contract that it will assume the sole risk and responsibility for damages to persons and property and to hold said railroad company harmless for any claim for personal injuries, an employe of the show company, upon entering its service and accepting its provision for transportation, makes himself a party to such contract, relieving the railroad company of liability for injuries inflicted upon him, and the provisions of the act of 1901 (Acts 1901, p. 515, §7082 *et seq.* Burns 1901) do not apply. p. 104.

From Union Circuit Court; *George L. Gray,* Judge.

Action by John Henry, Sr., as administrator of the estate of John Henry, Jr., against the Cleveland, Cincinnati, Chicago & St. Louis Railway Company. From a judgment on a verdict for plaintiff for $3,000, defendant appeals. Transferred from Appellate Court under §1394 Burns 1908, subd. 2, Acts 1901, p. 565, §10. *Reversed.*

*Florea & Broaddus, L. J. Hackney* and *Frank L. Littleton,* for appellant.

*Stanford & Barnhart* and *Reuben Conner,* for appellee.

HADLEY, J.—Appellee's decedent, an employe of a traveling show company, was fatally injured in a collision while being hauled by appellant in a car belonging to his employer.

The complaint alleges that the John H. Sparks Show Company was engaged in giving exhibitions in towns and cities of Indiana, and to enable it to transfer its employes, animals and property from one place to another, owned and had in use four railway cars, properly fitted up and arranged for the business; that the decedent was an employe of the show company, which company had a contract with appellant to haul said show cars from place to place over its railroad; that the show company having concluded a performance at Veedersburg, and loaded all its property and employes on its said cars, the defendant, by its employes, while engaged in making up a train, took said cars from the siding onto the defendant's main track for the purpose of hauling them to Crawfordsville; that the plaintiff's decedent, as one of the employes of said show company, was lawfully upon and in one of said show cars, and while said cars were lawfully upon the tracks of the defendant, the defendant, by its employes, negligently ran one of its engines and cars against the car occupied by the decedent, with great force and violence, whereby said show car was crushed and the decedent fatally injured, without fault of the decedent or his next of kin.

Appellant's demurrer to the complaint being overruled, it answered in two paragraphs: (1) the general denial; (2) that at the time and on the occasion alleged in the complaint the defendant was not acting as a common carrier, and sustained no such relation to John Henry, Jr.; that the car on which the latter was injured was not at the time used for common carriage, or public conveyance, but, with the other show cars, was employed in the private business of said show company in housing, storing and transporting its employes, property, animals and effects from point to

point where it gave entertainments for private gain; that at the time of the accident the show cars were being handled and transported by the defendant as a private carrier under a special contract entered into by said show company and the defendant on August 26, 1902, in effect, so far as material here, as follows: The defendant, in consideration of the sum of $75, agrees to furnish a conductor, engineer and trainmen, together with sufficient power to haul four cars for the show company in regular freight-trains with the privilege of stopping for exhibitions as herein specified, leaving Veedersburg, Indiana, about midnight September 1, to show at Crawfordsville September 2. The contract contains these provisions: .

"The above-described cars must conform to the requirements of the laws of the United States as to height of draw-bars and their equipment with grab irons, automatic draw-bars and air-brakes.   *   *   *

The cars are to be loaded and unloaded by the party of the second part [show company].   *   *   *

The engineers, conductors and brakemen to be provided by the party of the first part shall be sober and reliable.   *   *   *

The party of the second part shall assume all responsibility for damages to persons or property which are hereby transported at its sole risk, and it further agrees to indemnify and hold said railroad company harmless on account of any claim for personal injuries or damage to property."

It is further averred in the answer that the consideration of said contract was, as stated herein, that the defendant should and did assume no liability whatever for damages or injuries to said show company, at whose sole risk it agreed said transportation should be furnished, and who, by said agreement, provided and stipulated that this defendant should be held harmless on account of any claim for personal injury; that John Henry, Jr., occupied said car on said occasion and at said time, and his only relation to this defendant was under and by virtue of said contract,

and said Henry had not paid or tendered fare or compensation for carriage by the defendant, nor had he agreed to do so. The defendant further avers that it has at no time held itself out to the public as a carrier of property, cars and servants therein of individuals who were not operating as common carriers, and it has at no time transported such cars, except by special contract and by private carriage.

The objection made to the complaint is that no facts are given showing damage to the next of kin, to wit, father, mother, sister and brother given by name, "who have

1.  sustained damages by his death in the sum of $10,-000." It is contended that, where the next of kin are ancestral and collateral, there is no presumption of damage to them, and that any damage suffered is special and must be specially pleaded. The complaint, however, is sufficient upon the authority of *Pennsylvania Co.* v. *Coyer* (1904), 163 Ind. 631.

So far as expression has been given, there is unanimity among the courts of this country that a railroad corporation, as a common carrier, is under no legal duty to

2.  haul show cars, that is, cars owned and fitted up by showmen, and used exclusively by them to house and transport their employes and show property as a complete outfit, from place to place over railroads. *Coup* v. *Wabash, etc., R. Co.* (1885), 56 Mich. 111, 22 N. W. 215, 56 Am. Rep. 374; *Chicago, etc., R. Co.* v. *Wallace* (1895), 66 Fed. 506, 14 C. C. A. 257, 30 L. R. A. 161; *Robertson* v. *Old Colony R. Co.* (1892), 156 Mass. 525, 31 N. E. 650, 32 Am. St. 482; *Wilson* v. *Atlantic, etc., R. Co.* (1904), 129 Fed. 774, 66 C. C. A. 486, affirmed in 133 Fed. 1022; 1 Hutchinson, Carriers (3d ed.), §88; Moore, Carriers, §38. The rule rests upon the principle that such loaded cars or vehicles are not such goods as railroads hold themselves out to carry, and in respect to which they assume a public duty to serve all alike who apply for carriage, and such cars being a class of property they do not profess to carry and the drawing of

which is inconsistent with their business, they are, therefore, exempt from all public duty to haul them. 1 Hutchinson. Carriers (3d ed.), §47, and authorities collated; Moore, Carriers, §1.

A common carrier may, however, become a private carrier, and by special agreement undertake for hire to carry that which he is under no obligation to carry. *Louis-*

3.   *ville, etc., R. Co.* v. *Keefer* (1896), 146 Ind. 21, 26, 38 L. R. A. 93, 58 Am. St. 348, and cases cited; *Pittsburgh, etc., R. Co.* v. *Mahoney* (1897), 148 Ind. 196, 200, 40 L. R. A. 101, 62 Am. St. 503, and cases cited; 1 Hutchinson, Carriers (3d ed.), §44. In the latter section the author states: "A common carrier may, however, undoubtedly become a private carrier or a bailee for hire, when, as a matter of accommodation or special engagement he undertakes to carry something which it is not his business to carry. The relation in such a case is changed from that of a common carrier to that of a private carrier, and where this is the effect of a special arrangement, a carrier is not liable as a common carrier and cannot be proceeded against as such." See, also, *Baltimore, etc., R. Co.* v. *Voigt* (1900), 176 U. S. 498, 44 L. Ed. 560, 20 Sup. Ct. 385.

A vast difference exists in the powers and duties of public or common carriers, and private carriers. A common carrier is one who holds himself out in common, that is,

4.   to all people alike, that he is engaged in the business of transporting persons or certain kinds of property, and is prepared and ready to carry for all who apply, on the same terms. From its very nature his business is one in which the people generally acquire an interest to the extent, at least, that the business shall be conducted honestly, impartially and efficiently. Hence the law intervenes as to the public carrier, and enforces certain regulations and limitations against him, in the interest of the public welfare. Among these regulations he is held, under the general rules of the common law, to be an insurer of the

property entrusted to him against loss from any source, except the act of God or the public enemy, is also held to the highest degree of care for the safety of his passengers, and is denied the right to make any contract for relief against the negligence of himself or employes.

A private carrier is one who does not engage in the business of carrying, or does not hold himself out to carry certain kinds or classes of property. He is one who is under no duty or obligation to make the carriage, is at liberty to refuse to accept it as he pleases, and will undertake it only upon terms satisfactory to himself. In respect to the undertaking he enjoys the full freedom of the right of contract, and may stipulate for relief from liability for every kind of accident resulting from negligence or otherwise. See authorities last cited. If appellant was under no duty as a public carrier to convey the show cars, it had the right, as a private carrier, to name the conditions upon which it would undertake it.

The decedent, when he embarked upon these cars, could not shut his eyes to the fact that their transportation to Crawfordsville would be the act of a private carrier. The character of the cars, their unsuitableness for general commercial uses, their peculiar construction, their occupancy solely by the outfit of a private business, their movement involving the use of a locomotive, engineer and train crew in the service of the railroad company, the right to carriage without the payment of fare—in all created such a state of appearances as would convey notice to all employes of the show company that the transporting of the cars from place to place over its railroad was no part of the company's ordinary business, nor in the capacity of a common carrier, and was under a special contract of some sort between the railroad company and the show company. Being so advised, it was the duty of the decedent to investigate for himself with respect to the nature of the contract. As was said by this court in *Webb* v. *John Hancock, etc.,* .

*Ins. Co.* (1903), 162 Ind. 616, 635, 66 L. R. A. 632: ''Where one has knowledge of facts sufficient to excite the attention of a person of ordinary prudence, and put him upon further inquiry, he is required to make such inquiry in good faith and with diligence, and, in the absence of so doing, he will be chargeable with the knowledge of the particular point or fact which such inquiry would have revealed.''

But it is argued that appellee's decedent was not a party to any contract relieving appellant from any liability for its negligence.    To this it is suggested with greater force that the decedent was not a party to any contract with appellant for his carriage.    He had made no effort to procure transportation from the railroad company.    He had bought no ticket.    He had tendered no fare to the appellant.    He had entered the show car for passage to Crawfordsville with the knowledge that he had obtained from appellant no right to be carried upon the railroad.    As a legal proposition, he was required to know that the car which he had entered would not be hauled to Crawfordsville under the legal rules which usually govern transportation by a public carrier. He was likewise bound to know that the car would be drawn to its destination under some private arrangement between his employer and the railroad company, and that whatever right he had to be carried over the railroad arose from the contract or agreement made by his employer with appellant.    His right could not rise higher than its source.    Being an employe of the show company, his right to transportation had been purchased, or stipulated for, by his employer. When he entered the showman's service, and accepted the method of transportation provided for the employes, the acceptance was subject to all the conditions upon which it rested.    In other words, he could not accept the benefit provided by his employer and put aside the burden.

In *Pittsburgh, etc., R. Co.* v. *Mahoney, supra,* the plaintiff was an employe of the Adams Express Company, and sued the railroad company for personal injuries alleged to have

been caused by the negligence of the railroad company's employes. The railroad company set up as a defense a special contract between it and the express company, whereby the express company agreed ''to assume all risk of loss or damage that may arise out of or result from its operation under this agreement,'' and ''to save and hold harmless'' the railroad company ''against the same,'' and especially to protect it against claims that might be made upon it for loss or damage, either to the employes of the express company or to its property, whether the loss may occur through the gross negligence of the railroad company or its employes, or otherwise. It also set up a contract between the plaintiff and the express company whereby the former agreed to assume all risk of the employment, and release the latter from any liability occasioned by his injury or death. In commenting upon the sufficiency of these contracts as a defense, the court said: ''As between the express company and the appellant, their contract saving the latter from liability for injuries to the former's servants could not, in its very nature, be more than an assumption or indemnity, as there could be no waiver of a right belonging to another standing independent of them. But it yet remains to determine whether Romick stood independent of the contract and the parties thereto. That contract, whether an assumption, indemnity, or waiver, included the demand sued upon in this case, for it covered a claim for damage to an employe of the express company, alleged to have occurred through the negligence of the railroad company, taking the very words of the clause, quoted above, from that contract. By the provisions of that contract the rights of the express company were fully measured. Its only right to be upon the tracks and right of way, through and by its servants, was by the provisions of that contract. Its license came only from the contract, and the appellee introduced the contract in evidence to show the right of his decedent to be upon the tracks. The express company,

operating by servants, was present, on the occasion in question, by Romick, its agent. His rights were those of the express company, and could not be greater. He was there by the license given the express company, and he could not accept the license and reject the conditions upon which it was granted. It is said, however, that it does not appear from allegation or proof that he knew of the conditions upon which the license was given, and we are aware that it was decided in *Brewer* v. *New York, etc., R. Co.* [1891], 124 N. Y. 59, 26 N. E. 324, 11 L. R. A. 483, 21 Am. St. 647, that the express agent must have notice of the contract of exemption to be bound thereby. But with what reason can it be said that the railroad company should have given notice to the employes of the express company of the particular provisions of the contract under which they were admitted upon and permitted to use the property of the railroad company? Since the contract is the basis of rights which he assumes and exercises, it should rather be said that he must inform himself of its provisions. Unlike the theory of the holdings in New York, our court holds such contracts as standing, not upon the relationship of a common carrier, but as existing only in the private agreements of the parties. Therefore, when Romick took employment with the express company, he was obliged to know that his rights and privileges did not depend upon the law as to common carriers, nor upon public or *quasi*-public duty of the railroad company, but that they rested upon private contract, to which he became subject in the performance of his duties for the express company in its relations to the appellant. He did not, therefore, occupy a position with relation to the railroad company independent of the contract between said two companies, but was chargeable with knowledge of the limitation upon the appellant's liability." See, also, *Russell* v. *Pittsburgh, etc., R. Co.* (1901), 157 Ind. 305, 55 L. R. A. 253, 87 Am. St. 214.

But it is argued by the appellee that the law as declared

in the cases of *Louisville, etc., R. Co.* v. *Keefer, supra,* and *Pittsburgh, etc., R. Co.* v. *Mahoney, supra,* was changed by the act of 1901 (Acts 1901, p. 515, §7082a *et seq.* Burns 1901). But we do not think so, as applied to the facts of this case. The statute declares three classes of contracts to be against public policy, and null and void, namely: "All contracts between employer and employe releasing the employer from liability for damages arising out of the negligence of the employer." §7082a, *supra.* "All contracts between employer and employe releasing third persons, copartnerships, or corporations from liability for damages arising out of the negligence of such third persons." §7082b, *supra.* "All contracts between an employe and a third person, copartnership or corporation in which it is agreed that the employer of such employe shall be released from liability for damages of such employe, arising out of the negligence of the employer." §7082c, *supra.*

The statute, being in derogation of the common law, must be held to apply to such contracts only as come clearly within its provisions. And certain classes of contracts being specified in the act, we cannot by construction extend it to others not specified, unless they arise by necessary implication. 2 Lewis's Sutherland, Stat. Constr. (2d ed.), §§454, 573. In the latter section it is stated: "Courts cannot properly give force to them [statutes in derogation of the common law] beyond what is expressed by their words, or is necessarily implied from what is expressed."

As we have seen, the show company contracted with the railroad company to haul its cars, loaded with the show employes and property, for a stipulated gross sum. On the side of the show company the contract was for the benefit of any one who should become its employe, and be assigned by it to quarters in the cars. The deceased, by entering the showman's service, and the acceptance of the provision made for the transportation of employes, in a

modified sense made himself a party to the contract. His rights and obligations were at least measured by it. But his alliance was with the covenants of his employer with the railroad company, namely, "in such transportation to assume the sole risk and responsibility for damages to persons and property, and to hold said railroad company harmless on account of any claim for personal injuries, or damage to property."

So far as it was the decedent's contract, it was with the railroad company, in effect relieving it, as a private carrier, under a special agreement, from liability for accidents, from all sources, affecting him. The decedent was not an employe of the railroad company. His contract was not with his employer releasing a third person from liability for negligence. Nor was it a contract of an employe with a third person releasing his employer from liability for negligence.

In any view that may be taken of the relation sustained by appellee's decedent to the contract between his employer and the railroad company, it cannot be said to fall within the inhibitions of the act of 1901, *supra,* and must, therefore, be held to be governed by the principles of the common law. Under this holding the railroad company's second paragraph of answer set up a good defense.

The judgment is therefore reversed, with instructions to overrule the demurrer to the second paragraph of answer, and for further proceedings in accordance with this opinion.