46

WEYERHAEUSER TIMBER COMPANY, *Appellant,* v.
H. H. HENNEFORD *et al., Respondents.*[1]

*W. E. Heidinger,* for appellant.

*The Attorney General* and *R. G. Sharpe, Assistant,*
for respondents.

HOLCOMB, J.—Appellant is a corporation organized
and existing under and by virtue of the laws of this
state, and engaged in the business of manufacturing
lumber. The corporation owns extensive timber lands
in the counties of Thurston, Lewis and Cowlitz, from
which it cuts timber for use in its mills. In order to
transport its timber products, it has constructed and
owns and operates two logging railroads; one extend-
ing from its lands in Thurston county to its plant in
Lewis county, the other connecting its properties

[1]Reported in 53 P. (2d) 308.

located in the counties of Cowlitz and Lewis. These logging railroads have been by appellant used exclusively for the transportation of its own forest products to its own mills.

Respondents, composing the state tax commission, contending that appellant, because of its ownership and operation of its logging railroads, falls within the purview of chapter 123, Laws of 1935, p. 356 (Rem. 1935 Sup., § 11156-1 [P. C. § 7088-31] *et seq.*), demanded of appellant that it make return to them, giving information concerning its logging railroads, pursuant to the statute above referred to. Appellant, contending that its operations do not fall within the act, brought this action to enjoin them, as the state tax commission, from requiring it to make any return or report in connection with its logging railroads. Respondents demurred to the complaint upon the ground that the same did not state facts sufficient to constitute a cause of action. The trial court having sustained this demurrer, appellant elected to stand upon its complaint and, from a judgment dismissing its action, has appealed.

In its complaint, appellant alleges, and it is admitted by demurrer, that it is not engaged in the business of transporting forest products either as a private carrier or carrier for hire and is not engaged in the business of carrier at all, either private or public, for hire or otherwise, but uses its logging railroad, cars and locomotives, solely and exclusively in conveying and transporting its own logs and forest products from its own timber lands to its own mills for its own use.

The only assignment of error made is that the trial court erred in sustaining respondents' demurrer and dismissing the action.

The title of chapter 123, Laws of 1935, p. 356, reads:

"An act relating to the assessment and taxation of the property of railroad companies, motor vehicle transportation companies, airplane companies, electric light and power companies, telegraph companies, telephone companies, gas companies, pipeline companies, water companies, heating companies, toll bridge companies, steamboat companies, and logging railroad companies; providing penalties for the violation thereof; repealing sections 35 to 50, inclusive, of chapter 130, Laws of the Extraordinary Session of 1925, and all other acts and parts of acts in conflict therewith; and declaring that this act shall take effect immediately."

By subdivision (14) of § 1, p. 359, of the act, the term "logging railroad company" is defined as follows:

"The term 'logging railroad company' shall mean and include any person owning, controlling, operating or managing real or personal property, used or to be used for or in connection with or to facilitate the conveyance and transportation of forest products by rail in this state, and engaged in the business of transporting forest products either as private carrier or carrier for hire." Rem. 1935 Sup., § 11156-1 [P. C. § 7088-31].

Section 3, p. 361, Rem. 1935 Sup., § 11156-3 [P. C. § 7088-33], prescribes that the companies mentioned in the title shall make annual reports of their properties to the state tax commission; section 7, p. 363, Rem. 1935 Sup., § 11156-7 [P. C. § 7088-37], of the act provides for the assessment of such properties by the commission for purposes of taxation.

Appellant argues that all of the businesses referred to in the title of the act or in the body thereof, with the exception of logging railroad companies, are public utilities, which are subject to state regulation and are required to file rate schedules and obligated to render

service to the public for compensation. Appellant also insists that the only logging railroad companies known to the statute law of this state are the so-called "toll logging railroad companies," organized pursuant to chapter 82, Laws of 1905, p. 161 (Rem. Rev. Stat., §§ 8395-8398 [P. C. §§ 4692-4695]), which are by the statute referred to as "quasi-public companies," and are common carriers, in so far as forest products are concerned. Such companies are, by the statute, granted the right of eminent domain, and are accordingly required to render, on demand, service to the public, from which they receive compensation.

Appellant contends that, as the state tax commission and its statutory predecessor has for many years assessed the operating properties of public utilities, but has not assessed property belonging to private corporations not devoted to the public service, it should be assumed that, in enacting the statute now under consideration, the legislature had in mind the procedure which had in this state been followed for many years, and that the statute should not, by implication merely, be construed against its contention.

In the eyes of the law, a private carrier is one who, by special contract, agrees to transport merchandise from one place to another, either gratuitously or for hire.

This court, in *Cushing v. White*, 101 Wash. 172, 172 Pac. 229, defined with great precision both common and private carriers, adopting and approving definitions from text writers and some decisions. Among the texts there approved were these:

"The private carrier is one who, without engaging in such business as a public employment, undertakes by special contract to transport goods in particular instances from one place to another." Dobie on Bailments and Carriers, § 106.

"A carrier is one that undertakes the transportation of persons or movable property, and the authorities, both elementary and judicial, recognize two kinds or classes of carriers, namely, private carriers and common carriers. A private carrier is one who, without being engaged in such business as a public employment, undertakes to deliver goods in a particular case for hire or reward. While a common carrier has been defined as one that holds itself out to the public to carry persons or freight for hire, . . ." 10 C. J. 37.

In *Forsyth v. San Joaquin Light & Power Corp.,* 208 Cal. 397, 281 Pac. 620, we find:

" 'Private carriers are such as carry for hire and do not come within the definition of common carrier.' "

"A private carrier is one who does not engage in the business of carrying, or does not hold himself out to carry certain kinds or classes of property. He is one who is under no duty or obligation to make the carriage, is at liberty to refuse to accept it as he pleases, and will undertake it only upon terms satisfactory to himself." *Cleveland, C. C. & St. L. R. Co. v. Henry,* 170 Ind. 94, 83 N. E. 710.

" 'A private carrier is one who agrees, by special agreement or contract, to transport persons or property from one place to another, either gratuitously or for hire; . . .' " *Stoner v. Underseth,* 85 Mont. 11, 277 Pac. 437.

"The business of a private carrier of goods is obtained by, and is dependent upon, his contract with the shipper." *Klein v. Baker,* 112 Cal. App. 157, 296 Pac. 631.

To the same effect are: *McIntyre v. Harrison,* 172 Ga. 65, 157 S. E. 499; *The Cape Charles,* 198 Fed. 346; and Words and Phrases, first and third series, Private Carrier.

The above citations are but a few of the multitude of cases, all to the same effect, defining a private carrier. There are none to the contrary.

The reasoning of respondents to the effect that the legislature did not use the words "private carrier" or "carrier for hire" in any technical legal sense, but meant to include any logging railroad company, is illogical and fallacious.

The only use that appellant has and makes of its logging railroads is in transporting its own logs, just as an orchardist would transport his own fruit by wagon or truck, or a farmer his own grain by a wagon or truck, to market. It is 'legally impossible and absurd to say that appellant could contract with itself and make a contract to carry its own logs from its own timber-lands to its own mills.

■ There can be little doubt but that the legislature deliberately intended by the clause at the end of subdivision 14 of § 1, *supra,* "and engaged in the business of transporting forest products either as private carrier or carrier for hire," to include only such logging railroads as had become quasi-public carriers by holding themselves out as such carriers and transporting the logs of others than their own. If there is any doubt, however, this court has held, approving a pronouncement in *Gould v. Gould,* 245 U. S. 151, 38 S. Ct. 53, that in case of doubt, taxing statutes are most strongly construed against the government and in favor of the citizen. *Union Trust Co. v. Spokane County,* 145 Wash. 193, 259 Pac. 9.

The clause in question was deliberately added by the legislature in § 1-14, *supra,* to make its meaning clear and definite. Any other construction would delete a part of that section, which should never be done by a court unless otherwise impossible to make a practical, workable statute, which is not the case here. 59 C. J. 992; *McKay v. Department of Labor & Industries,* 180 Wash. 191, 39 P. (2d) 997.

For these reasons, the judgment of the trial court must be, and is, reversed.

MILLARD, C. J., MITCHELL, STEINERT, and GERAGHTY, JJ., concur.

BEALS, J. (dissenting)—While it is true that appellant, over its two-county logging railroad, carries only its own logs, it none the less operates a logging railroad. Whether or not it falls within the definition of "logging railroad company," as contained in subdivision (14), of § 1, chapter 123, Laws of 1935, p. 359, Rem. 1935 Sup., § 11156-1 [P. C. § 7088-31], quoted in the majority opinion, is the question to be here determined.

It certainly falls within this definition, unless it is exempted from the operation thereof by the last clause of the paragraph, which reads: ". . . and engaged in the business of transporting forest products either as private carrier or carrier for hire." The two classes which come within the definition are private carriers and carriers for hire, these two phrases being separated in the act by the disjunctive "or," and the legislature thereby indicated that the two phrases meant different things, not the same thing. There can be no misunderstanding as to the meaning of the words "carrier for hire"—they are too plain for construction. What might be said to be the *legal* definition of "private carrier" is one who transports goods for others by private contract for hire, but does not hold himself out to the public as engaged in the general transportation business and thereby become a common carrier whose duty it would be to serve all who might ask and pay the required charge. Such a private carrier is clearly a carrier for hire.

So, in my opinion, the legislature, having drawn a distinction between the two classes of carriers de-

scribed in the definition above referred to, did not use the words "private carrier" in the legal sense. Of course, a private carrier and a common carrier may carry merchandise gratuitously, but neither class can be said to be in the business of transporting merchandise free of charge.

In my opinion, the words "private carrier," as used in the legislative definition, should be held to include one who, like appellant here, is engaged in the business of transporting forest products by rail, for which transportation it receives no hire. In my opinion, if the words referred to do not include appellant, they have no meaning at all, and, under the frequently applied rule of statutory construction, all portions of an act should, if possible, be given some meaning.

It is undoubtedly the law that a property owner has no vested right in having his property assessed for taxation purposes by one state agency rather than another.

"Differences in the machinery for assessment or equalization do not constitute a denial of equal protection of the laws (citing *New York State v. Barker,* 179 U. S. 279)." *Southern R. Co. v. Watts,* 260 U. S. 519, 43 S. Ct. 192.

Appellant does not contend that its property should not be assessed, but merely differs with respondents as to the particular agency of the state which, under the law, shall set up the value of its railroad for taxation purposes.

Appellant admits that, if subdivision (14), of the act in question, above quoted, ended with the word "state," its railroad would be included within the act, and would properly be assessed by the tax commission; appellant then arguing, however, that the last portion of the paragraph indicates that such logging railroads as that here in question are not within

the purview of the statute. Appellant quotes definitions of carrier and of private carrier, arguing that the law recognizes but two classes of carriers—common carriers and private carriers. If the statute here in question referred to these classes only, a different question would be presented, but the two classes named in the statute are private carriers and carriers for hire.

I cannot concur in the view that the last portion of the statutory definition excludes one situated as is appellant here, and I accordingly dissent from the conclusion reached by the majority.

BLAKE, MAIN, and TOLMAN, JJ., concur with BEALS, J.