[No. 36583. En Banc. December 12, 1963.]

KING COUNTY, *Respondent*, v. TAX COMMISSION OF THE STATE OF WASHINGTON, *Appellant*.*

*The Attorney General, James A. Furber* and *Henry W. Wager, Assistants,* for appellant.

*Charles O. Carroll, James J. Caplinger,* and *William L. Paul, Jr.,* for respondent.

ROSELLINI, J.—This is an appeal from a judgment of the Superior Court for King County, decreeing that sales taxes

*Reported in 387 P. (2d) 756.

paid by King County as purchaser of services of contractors in clearing the channels of portions of the Snoqualmie and Tolt rivers for flood-control purposes should be refunded.[1] The question to be answered is whether the clearing of logs and debris from the bed and banks of a river is "clearing land" within the meaning of RCW 82.04.050, which provides, *inter alia:*

" . . .

"The term 'sale at retail' or 'retail sale' shall include the sale of or charge made for tangible personal property consumed and/or for labor and services rendered in respect to the following: (a) The installing, repairing, cleaning, altering, imprinting, or improving of tangible personal property of or for consumers, excluding, however, services rendered in respect to live animals, birds and insects; (b) the constructing, repairing, decorating, or improving of new or existing buildings or other structures under, upon, or above real property of or for consumers, including the installing or attaching of any article of tangible personal property therein or thereto, whether or not such personal property becomes a part of the realty by virtue of installation, and *shall also include the sale of services or charges made for the clearing of land and the moving of earth excepting the mere leveling of land used in commercial farming or agriculture;* . . .

" . . .

"The term shall not include the sale of or charge made for labor and services rendered in respect to the building, repairing, or improving of any publicly owned street, place, road, highway, bridge, or trestle which is used or to be used primarily for foot or vehicular traffic, . . ." Laws of 1961, Ex. Ses., chapter 24, § 1, p. 2659. (Italics ours.)

---

[1]The work was done under two contracts, special provisions of which were:

"Description of Work: 'The work proposed under this project contemplates the removal of log jams and debris from channels and banks of the Tolt River in four (4) designated areas as shown on the attached plans and specifications. All work shall be in accordance with the plans, these Special Provisions and the Standard Specifications.' . . .

"Specifications for Clearing and Disposing: 'All trees shall be removed from the banks in the separate areas along a strip twenty feet wide on each bank of the channel. Upon completion of work the area shall be left in a neat and orderly condition.' "

Prior to 1959, the provision had read:

" . . .

" . . . (b) the constructing, repairing, decorating, or improving of new or existing buildings or other structures under, upon, or above real property of or for consumers, including the installing or attaching of any article of tangible personal property therein or thereto, whether or not such personal property becomes a part of the realty by virtue of installation, and shall also include the sale of services or charges made for the clearing of land and the moving of earth to the extent necessary for such constructing or improving, unless the charge therefor is stated separately from other charges made in connection with the work performed, under such rules as the tax commission may prescribe; . . ." Laws of 1957, chapter 279, § 1, p. 1112.

The clearing of logs and debris from a river channel was not embraced within that provision, inasmuch as it is not an activity which is done in connection with the constructing, repairing, decorating, or improving of a new or existing building or other structure. When the legislature amended that law in 1959, it omitted the words "to the extent necessary for such constructing or improving" as well as the exception where the charges for such services are separately stated. Consequently, the definition no longer includes only land-clearing services which are necessary for the construction or improvement of buildings or other structures, but includes as well land clearing which is not necessary for such purposes.

A retail sales tax is imposed under the provisions of RCW 82.08.020. Exemptions are listed in RCW 82.08.030. Prior to 1963, the act did not exempt sales of labor and services for flood-control purposes. The respondent contends, nevertheless, that the clearing of logs and debris from the banks and bed of a river do not come within the purview of the statute.

We have found but one Washington case wherein this court has discussed the term "land clearing." In *Norman v. Department of Labor & Industries,* 10 Wn. (2d) 180, 116 P. (2d) 360, a workman had been injured while engaged in eradicating poison ivy from land. It was the contention

of the Department of Labor and Industries that this was not "land clearing" within the meaning of Rem. Rev. Stat. (Sup.), § 7676. In denying this contention, this court said:

"Appellant argues that the land clearing as mentioned in the statute, connotes a substantial removal of timber and brush. Its counsel asked the court to take judicial knowledge of land clearing in the state of Washington, which they claim is usually performed with powder, tractors, cables, and donkeys.

"There are other ways of clearing land in this state dependent, of course, upon the locality. Some land clearing is accomplished by the cutting of trees and the blasting, pulling, and burning of stumps, some land, covered with sage brush, is cleared by the use of iron rails to which teams of horses are hitched, while other lands are cleared by digging with shovels and grubbing hoes and the burning of debris. Therefore, we cannot assume that the legislature had any definite method in mind, but rather that it intended to include all methods of land clearing when it mentioned the term 'land clearing' in the statute.

"In this case the land belonging to the county was encumbered by poison ivy or poison oak, which gave off an irritant oil rendering it poisonous to the touch. In that condition the land was not usable for any purpose. The only way to place it in a condition for use was to eradicate the vines and roots of the plants. It had to be cleared of these vines and roots in order that it could be put to some useful purpose. It is our opinion that the work was covered by the act and that the workman was engaged in extra-hazardous work (employment) at the time he was injured."

In that case, of course, the court was concerned with the meaning of the word "clearing" rather than the word "land."

The reasoning, however—that where no method of clearing was specified, all methods were intended to be covered—applies to the interpretation of the word "land." Where no restrictive definition of "land" was contained in the statute, we must assume that the legislature intended to include the clearing of any and all land except that which was expressly excepted. The only relevant exceptions contained in the statute are of charges made for labor and services rendered in the mere leveling of land

for commercial and agricultural purposes and in respect to the

" . . . building, repairing, or improving of any publicly owned street, place, road, highway, bridge, or trestle which is used or to be used primarily for foot or vehicular traffic. . . ." Laws of 1959, *supra.*

Applying the maxim, *expressio unius est exclusio alterias,* the legislature did not intend to exclude the clearing of land for flood-control purposes.

The respondent argues, however, that a river bed and banks are not land, because they are a part of the river. It is true that they hold the river and shape it, but they are not water. In Webster's Unabridged Dictionary (2d ed.), the first definition of the word land is given as "the solid part of the earth's surface; distinguished from *sea.*" A river bed would fall within this definition. Also, in Black's Law Dictionary, the definition is as follows:

"Land, in the most general sense, comprehends any ground, soil, or earth whatsoever; as fields, meadows, pastures, woods, moors, waters, marshes, furzes, and heath."

We conclude that the term "clearing land" as used in the statute, is broad enough to include the clearing of the banks and beds of rivers.

The decision we have reached is in harmony with the latest revision of the statute. The 1963 legislature amended RCW 82.08.030, which enumerates the sales exempted from the tax, and provided an exemption as follows:

" . . .

"(19) Sales to municipal corporations, the state, and all political subdivisions thereof of tangible personal property consumed and/or of labor and services rendered in respect to contracts for watershed protection and/or flood prevention. This exemption shall be limited to that portion of the selling price which is reimbursed by the United States government according to the provisions of the Watershed Protection and Flood Prevention Act, Public Laws 566, as amended." Laws of 1963, Ex. Ses., chapter 28, § 3.

Since the exemption applies only to sales of services for watershed protection and/or flood prevention which are to

be reimbursed by the federal government, this amendment indicates that sales of services for land clearing for flood-control purposes were taxable under the 1959 statute. Logically, the legislature could not carve out an exemption unless it had previously imposed a tax.

Another theory urged by the respondent in support of the judgment is that it is not a "person" as defined in RCW 82.04.030, which provides:

" 'Person' or 'company,' herein used interchangeably, means any individual, receiver, assignee, trustee in bank-ruptcy, trust, estate, firm, copartnership, joint venture, club, company, joint stock company, business trust, municipal corporation, corporation, association, society, or any group of individuals acting as a unit, whether mutual, cooperative, fraternal, nonprofit, or otherwise and the United States or any instrumentality thereof."

The trial court refused to sustain this contention of the respondent and based its decision solely on its determination that clearing the bed and banks of a river is not clearing land. The respondent urges, however, in support of the judgment, that it is not a municipal corporation, as is a city or town, but is merely a political subdivision of the state. We have held in at least two cases that a county is a munici-pal corporation, or at least a quasi-municipal corporation. *State ex rel. Summerfield v. Tyler,* 14 Wash. 495, 45 Pac. 31, *Lincoln Cy. v. Brock,* 37 Wash. 14, 79 Pac. 477. See, also, *State ex rel. Eastvold v. Yelle,* 46 Wn. (2d) 166, 279 P. (2d) 645.

However, we do not find it necessary to determine whether counties fall within the definition of "person" set forth in RCW 82.04.030.

The respondent was not taxed as a "person" or "com-pany," but as a buyer (under RCW 82.08.050) of labor and services in the clearing of land. "Buyer" is defined in RCW 82.08.010, as follows:

"(3) 'Buyer' and 'consumer' include, without limiting the scope hereof, every individual, receiver, assignee, trustee in bankruptcy, trust, estate, firm, copartnership, joint ven-ture, club, company, joint stock company, business trust,

corporation, association, society, or any group of individuals acting as a unit, whether mutual, cooperative, fraternal, nonprofit, or otherwise, municipal corporation, quasi municipal corporation, and also the state, its departments and institutions and all political subdivisions thereof, irrespective of the nature of the activities engaged in or functions performed, and also the United States or any instrumentality thereof;"

The respondent falls within this definition.

The judgment is reversed and the cause remanded with directions to dismiss the petition.

DONWORTH, FINLEY, HUNTER, HAMILTON, and HALE, JJ., concur.

HILL, J. (dissenting)—I dissent. The majority rely on *Norman v. Department of Labor & Industries* (1941), 10 Wn. (2d) 180, 116 P. (2d) 360, which holds that a workman engaged in eradicating poison ivy was engaged in "land clearing," and therefore entitled to benefits under the Workmen's Compensation Act (then Rem. Rev. Stat. (Sup.) § 7676, now RCW 51.20.010). We construed that act liberally for the benefit of injured workmen, as the act requires.

We are now construing "clearing of land" under the provisions of the sales tax statute (RCW 82.04.050). The majority conclude that the legislature intended the clearing of river channels of log jams and debris to facilitate flood control to be the "clearing of land," and the services and charges made therefor to be taxable.

The relevancy of the *Norman* case to the present problem seems slight. I do not believe that the legislature ever contemplated an attempt to tax a county for the clearing of its river channels.

If we may paraphrase Daniel Webster's statement, in arguing the *Dartmouth College* case,[2] "The Tolt River may be a small stream but there are those who love it." Those who have fly-fished the Tolt and know its limpid pools and

---

[2] *Trustees of Dartmouth College v. Woodward* (1819), 17 U. S. 250 (4 Wheat. 518).

rushing currents would be surprised to be told that its channel is just as much land as is a farmer's field. Indeed, more so, for to level land for agricultural use is exempt from tax as land clearing, while removing logs and debris from a river channel is taxable as land clearing. Those who have been awed by the Tolt's sweep and power when spring freshets send its waters swirling, would be surprised to know that the clearing of its channel of logs and debris is a land clearing operation.

We have said that if there was any doubt as to the meaning of a taxing statute, it must be construed most strongly against the taxing power in favor of the taxpayer. *Buffelen Lbr. & Mfg. Co. v. State* (1948), 32 Wn. (2d) 40, 200 P. (2d) 509; *Weyerhaeuser Tbr. Co. v. Henneford* (1936), 185 Wash. 46, 53 P. (2d) 308; *Union Trust Co. of Spokane v. Spokane Cy.* (1927), 145 Wash. 193, 259 Pac. 9.

I believe that King County was entitled to the benefit of a very real doubt as to whether the legislature intended the clearing of river channels for flood control purposes to be the "clearing of land." The trial court should be affirmed.

OTT, C. J. and WEAVER, J., concur with HILL, J.